Nos. 2024-1315, 2024-1316

# United States Court of Appeals
# for the Federal Circuit

MEMORYWEB, LLC,

*Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD.,

*Appellee.*

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, Nos. IPR2022-00221 and IPR2022-00222

## APPELLEE'S RESPONSE BRIEF

Lauren A. Degnan
Michael J. McKeon
Christopher Dryer
Irene Hwang
**FISH & RICHARDSON P.C.**
1000 Maine Avenue, S.W.
Suite 1000
Washington, DC 20024
Tel: (202) 783-5070
degnan@fr.com

Timothy Rawson
**FISH & RICHARDSON P.C.**
12860 El Camino Real
Ste. 400
San Diego, CA 92130
Tel: (858) 678-5070

August 9, 2024

*Attorneys for Appellee
Samsung Electronics Co., Ltd.*

## Representative Claim 15 of U.S. Patent No. 10,621,228 (depends on claim 1)

1. A method comprising:

responsive to a first input, causing a map view to be displayed on an interface, the map view including:

(i) an interactive map;

(ii) a first location selectable thumbnail image at a first location on the interactive map; and

(iii) a second location selectable thumbnail image at a second location on the interactive map;

responsive to an input that is indicative of a selection of the first location selectable thumbnail image, causing a first location view to be displayed on the interface, the first location view including (i) a first location name associated with the first location and (ii) a representation of at least a portion of one digital file in a first set of digital files, each of the digital files in the first set of digital files being produced from outputs of one or more digital imaging devices, the first set of digital files including digital files associated with the first location;

responsive to an input that is indicative of a selection of the second location selectable thumbnail image, causing a second location view to be displayed on the interface, the second location view including (i) a second location name associated with the second location and (ii) a representation of at least a portion of one digital file in a second set of digital files, each of the digital files in the second set of digital files being produced from outputs of the one or more digital imaging devices, the second set of digital files including digital files associated with the second location; and

responsive to a second input that is subsequent to the first input, causing a people view to be displayed on the interface, the people view including:

(i) a first person selectable thumbnail image including a representation of a face of a first person, the first person being associated with a third set of digital files including digital photographs and videos;

(ii) a first name associated with the first person, the first name being displayed adjacent to the first person selectable thumbnail image;

(iii) a second person selectable thumbnail image including a representation of a face of a second person, the second person being associated with a fourth set of digital files including digital photographs and videos; and

(iv) a second name associated with the second person, the second name being displayed adjacent to the second person selectable thumbnail image.

. . . .

15. The method of claim 1, further comprising:

responsive to an input that is indicative of a selection, in the first location view, of the representation of the at least a portion of the one digital file in the first set of digital files, causing a first digital file to be displayed on the interface; and

responsive to an input that is indicative of a selection, in the second location view, of the representation of the at least a portion of the one digital file in the second set of digital filed, causing a second digital file to be displayed on the interface.

Appx330-331.


**<u>Representative Claim 8 of U.S. Patent No. 10,423,658 (depends on claims 1, 5, and 7)</u>**

1. A computer-implemented method of displaying at least a portion of a plurality of (i) digital photographs, (ii) videos, or (iii) a combination of (i) and (ii), each of the digital photographs and videos being associated with a geotag indicative of geographic coordinates where the respective digital photograph or video was taken, the method comprising:

displaying an application view on a video display device including displaying a plurality of selectable elements, the plurality of selectable elements including a location selectable element;

responsive to a click or tap of the location selectable element, displaying a map view on a video display device, the displaying the map view including displaying:

(i) a representation of an interactive map;

(ii) a first location selectable thumbnail image at a first location on the interactive map, the first location being associated with the geographic coordinates of a first geotag, a first set of digital photographs and videos including all of the digital photographs and videos associated with the first geotag;

(iii) a first count value image partially overlapping the first location selectable thumbnail image, the first count value image including a first number that corresponds to the number of digital photographs and videos in the first set of digital photographs and videos;

(iv) a second location selectable thumbnail image at a second location on the interactive map, the second location being associated with the geographic coordinates of a second geotag, a second set of digital photographs and videos including all of the digital photographs and videos associated with the second geotag; and

(v) a second count value image partially overlapping the second location selectable thumbnail image, the second count value image including a second number that corresponds to the number of digital photographs and videos in the second set of digital photographs and videos;

responsive to a click or tap of the first location selectable thumbnail image, displaying a first location view on the video display device, the displaying the first location view including displaying (i) a first location name associated with the first geotag and (ii) a scaled replica of each of the digital photographs and videos in the first set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the first set of digital photographs and videos not being overlaid on the interactive map; and

responsive to a click or tap of the second location selectable thumbnail image, displaying a second location view on the video display device, the displaying the second location view including displaying (i) a second location name corresponding to the second geotag and (ii) a scaled replica of each of the digital photographs and videos in the second set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the second set of digital photographs and videos not being overlaid on the interactive map.

. . . .

5. The computer-implemented method of claim 1, wherein the plurality of selectable elements further includes a people selectable element, the method further comprising responsive to a click or tap of the people selectable element, displaying a people view, the displaying the people view including displaying:

      (i) a first person selectable thumbnail image including an image of a face of a first person, a third set of digital photographs and videos including digital photographs and videos associated with the first person;

      (ii) a name associated with the first person, the name associated with the first person being displayed adjacent to the first person selectable thumbnail image;

      (iii) a second person selectable thumbnail image including an image of a face of a second person, a fourth set of digital photographs and videos including digital photographs and videos associated with the second person; and

      (iv) a name associated with the second person, the name associated with the second person being displayed adjacent to the second person selectable thumbnail image.

. . . .

7. The computer-implemented method of claim 5, further comprising responsive to a click or tap of the first person selectable thumbnail image, displaying a first person view, the displaying the first person view including displaying (i) the name associated with the first person and (ii) a scaled replica of each of the digital photographs and videos in the third set of digital photographs.

8. The computer-implemented method of claim 7, wherein the displaying the first person view further includes displaying a first-person-location selectable element.

Appx330.

# <u>CERTIFICATE OF INTEREST</u>

The undersigned counsel certifies that the following responses are correct:

1.  The full name of every entity represented in this case by the counsel filing this certificate:

    **Samsung Electronics Co., Ltd.**

2.  For each entity, the name of every real party in interest, if that entity is not the real party in interest:

    **Samsung Electronics America, Inc.**

3.  For each entity, that entity's parent corporation(s) and every publicly held corporation that owns ten percent (10%) or more of its stock:

    **N/A**

4.  The names of all law firms, partners, and associates that have not entered an appearance in the appeal, and (a) appeared for the entity in the lower tribunal, or (b) are expected to appear for the entity in this court are:

    **Fish & Richardson P.C.: Christopher O. Green, Hyun Jin In, Jeremy J. Monaldo, W. Karl Renner**

5.  Identification of whether there are any related or prior cases, other than the originating case number(s), that meet the criteria under Federal Circuit Rule 47.5:

    **Yes.  See Notice of Related Case Information [Docket 9]**

6.  All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

    **N/A**

August 9, 2024                                  _/s/  Christopher Dryer_____
                                                      Christopher Dryer

i

## **TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ...................................................................... i

TABLE OF AUTHORITIES .......................................................................v

STATEMENT OF RELATED CASES .................................................... ix

COUNTER-STATEMENT OF THE ISSUES .........................................1

INTRODUCTION ........................................................................................2

COUNTER-STATEMENT OF THE CASE ...........................................3

I.    The MemoryWeb Patents ................................................................3

    A.    The '228 Patent ..................................................... 6

    B.    The '658 Patent ..................................................... 7

II.   The Prior Art Discloses the Allegedly-Novel "People View" ........................8

    A.    Okamura ............................................................... 8

    B.    Belitz...................................................................11

III.  The Board Proceedings ('228 Patent)...........................................13

IV.   The Board Proceedings ('658 Patent)...........................................15

V.    The Parallel Apple IPR Proceedings ............................................17

SUMMARY OF THE ARGUMENT ......................................................18

ARGUMENT ..............................................................................................19

I.    Standard of Review.........................................................................19

II.   MemoryWeb's Appeal Is Moot as to Claims 1-14, 16-17 of the '228 Patent and Claims 1-2, 5-7, 13 of the '658 Patent ................................20

III.  The Board Properly Construed the MemoryWeb Patents ...........................22

A.    The Proper Construction of "People View" Does Not Require Displaying Two Names and Two Thumbnails Simultaneously ........................................................ 22

B.    "Responsive to" Does Not Preclude Additional User Actions ............................................................................ 26

    1.    The Board Did Not Equate "Responsive to" with Merely "Subsequent to" or Exclude a Cause-and-Effect Relationship .................................................. 28

    2.    The Specification Supports the Board's Construction ............................................................ 30

    3.    The Board Did Not Err in Noting MemoryWeb's Admission During the Oral Hearing ......................... 33

C.    The Board Correctly Held That Additional Attributes of the '228 Patent's "People View" Did Not Need To Display Immediately "Responsive To" the Second Input ................. 35

IV.    Substantial Evidence Supports the Board's Finding That Okamura Discloses the "First Person" View in Claims 7-12 of the '658 Patent ................................................................. 37

A.    Okamura Discloses Displaying the "First Person View" Under the Correct Construction ........................................ 37

B.    MemoryWeb's Issue Preclusion Arguments Lack Merit .................. 39

    1.    The Board Expressly Stated in the '228 Decision That It Did Not Decide Whether Okamura and Belitz Render Claim 18 Unpatentable ...................... 40

    2.    Samsung's Inability To Obtain Appellate Review on Claims 18-19 Prohibits Application of Issue Preclusion .................................................................. 41

    3.    The Unpatentability of Claims 18-19 Removed Any Incentive for Samsung To Appeal ...................... 42

C.    The Board's Decision Finding Claims 7-12 of the '658 Patent Unpatentable Is Not Arbitrary and Capricious ........................ 43

V.  Substantial Evidence Supports the Board's Motivation-To-
    Combine Determination in the '228 and '658 Decisions ............................45

    A.  Substantial Evidence Supports the Board's Findings That
        a POSITA Would Have Been Motivated To Combine
        Okamura with Belitz To Obtain Multiple Benefits ........................... 46

        1.  Samsung Identified Multiple Ways To Combine
            Okamura with Belitz .....................................................................46

        2.  The Board Credited Samsung's Evidence That the
            Relevant Ways of Combining Okamura and Belitz
            Have Multiple Benefits .................................................................48

    B.  The Board Sufficiently Addressed and Rejected
        MemoryWeb's "Teaching Away" Arguments .................................... 53

        1.  The Board Properly Addressed Okamura's
            Statements About the Related Art and Found That
            Belitz Does Not Suffer from the Purported Scaling
            Problems Described in Okamura .................................................54

        2.  The Purported Disadvantage Would Not Preclude a
            Motivation To Combine .................................................................56

    C.  MemoryWeb's Remaining Complaints Regarding
        the '228 Decision Are Groundless ..................................................... 58

        1.  The Board Identified Numerous Advantages
            Offered by the Combination .........................................................58

        2.  The Board Adequately Weighed the Advantages
            and Disadvantages of the Combination in the '228
            Decision ........................................................................................60

    D.  MemoryWeb's Remaining Complaints Regarding
        the '658 Decision Lack Merit.............................................................. 61

CONCLUSION..................................................................................................63

CERTIFICATE OF SERVICE AND FILING .......................................................65

CERTIFICATE OF COMPLIANCE......................................................................66

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*,
　949 F.3d 1366 (Fed. Cir. 2020) ........................................................19

*Apple Inc. v. MemoryWeb LLC*,
　IPR2022-00031, Paper No. 1 (Oct. 30, 2021) ..................................17

*Apple Inc. v. MemoryWeb, LLC*,
　IPR2022-00031, Paper No. 85 (PTAB Dec. 8, 2023) ...........18, 20, 41

*Apple Inc. v. MemoryWeb LLC*,
　IPR2022-00033, Paper No. 1 (Nov. 3, 2021) ....................................18

*Apple Inc. v. MemoryWeb, LLC*,
　IPR2022-00033, Paper No. 39 (PTAB May 18, 2023) ..........18, 20, 43

*Apple Inc. v. MemoryWeb, LLC*,
　No. 23-2361, ECF No. 33 (Fed. Cir. July 2, 2024) ...............18, 20, 41

*Apple Inc. v. Qualcomm Inc.*,
　992 F.3d 1378 (Fed. Cir. 2021) ........................................................41

*Axonics, Inc. v. Medtronic, Inc.*,
　75 F.4th 1374 (Fed. Cir. 2023) .........................................................37

*Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*,
　419 U.S. 281 (1974)...........................................................................63

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
　4 F.4th 1370 (Fed. Cir. 2021) ...........................................................56

*Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*,
　946 F.3d 1367 (Fed. Cir. 2020) ........................................................29

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*,
　535 U.S. 722 (2002)...........................................................................34

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
　582 F.3d 1288 (Fed. Cir. 2009) ........................................................39

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
721 F.3d 1330 (Fed. Cir. 2013) ..........................................................42

*Generation II Orthotics Inc. v. Med. Tech. Inc.*,
263 F.3d 1356 (Fed. Cir. 2001) ..........................................................35

*Google LLC v. Conversant Wireless Licensing S.A.R.L.*,
753 F. App'x 890 (Fed. Cir. 2018) ......................................................56

*Graham v. John Deere Co. of Kansas City*,
383 U.S. 1 (1966)..................................................................................19

*HTC Corp. v. Cellular Commc'ns Equip., LLC*,
877 F.3d 1361 (Fed. Cir. 2017) ..........................................................32

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) ....................................................37, 38

*Intel Corp. v. PACT XPP Schweiz AG*,
61 F.4th 1373 (Fed. Cir. 2023) ...........................................................61

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*,
821 F.3d 1359 (Fed. Cir. 2016) ....................................................19, 56

*Jones v. United States*,
846 F.3d 1343 (Fed. Cir. 2017) ....................................................40, 41

*JTEKT Corp. v. GKN Auto. Ltd.*,
898 F.3d 1217 (Fed. Cir. 2018) ..........................................................42

*Kircher v. Putnam Funds Trust*,
547 U.S. 633 (2006)........................................................................41, 42

*Knowles Elecs. LLC v. Cirrus Logic, Inc.*,
883 F.3d 1358 (Fed. Cir. 2018) ..........................................................20

*Medgraph, Inc. v. Medtronic, Inc.*,
843 F.3d 942 (Fed. Cir. 2016) ............................................................23

*Medichem, S.A. v. Rolabo, S.L.*,
437 F.3d 1157 (Fed. Cir. 2006) ..........................................................56

*In re Mouttet*,
    686 F.3d 1322 (Fed. Cir. 2012) .......................................................................20

*Novartis AG v. Torrent Pharms. Ltd.*,
    853 F.3d 1316 (Fed. Cir. 2017) .......................................................................57

*In re NTP, Inc.*,
    654 F.3d 1279 (Fed. Cir. 2011) .................................................................45, 58

*In re Nuvasive*,
    842 F.3d 1376 (Fed. Cir. 2016) .......................................................................59

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*,
    520 F.3d 1358 (Fed. Cir. 2008) .......................................................................23

*Outdry Techs. Corp. v. Geox S.p.A.*,
    859 F.3d 1364 (Fed. Cir. 2017) .......................................................................58

*Paice LLC v. Ford Motor Co.*,
    881 F.3d 894 (Fed. Cir. 2018) ...................................................................44, 45

*Penda Corp. v. United States*,
    44 F.3d 967 (Fed. Cir. 1994) ...........................................................................41

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) .................................................................25, 35

*Power Integrations, Inc. v. Semiconductor Components Indus., LLC*,
    926 F.3d 1306 (2019)........................................................................................42

*Renishaw PLC v. Marposs Societa' Per Azioni*,
    158 F.3d 1243 (Fed. Cir. 1998) .......................................................................34

*Sisvel Int'l S.A. v. Sierra Wireless, Inc.*,
    81 F.4th 1231 (Fed. Cir. 2023) ........................................................................28

*Spencer v. Kemna*,
    523 U.S. 1 (1998)..............................................................................................41

*United Access Techs., LLC v. Centurytel Broadband Servs. LLC*,
    778 F.3d 1327 (Fed. Cir. 2015) .......................................................................40

*United Therapeutics Corp. v. Liquidia Techs., Inc.*,
    74 F.4th 1360 (Fed. Cir. 2023) ............................................................21

*Vicor Corp. v. SynQor, Inc.*,
    869 F.3d 1309 (Fed. Cir. 2017) ...........................................................43

*Vivid Techs., Inc. v. Am. Sci. Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999) .............................................................30

*In re Watts*,
    354 F.3d 1362 (Fed. Cir. 2004) ...........................................................33

*Weber, Inc. v. Provisur Techs., Inc.*,
    92 F.4th 1059 (Fed. Cir. 2024) ............................................................20

*Wildcat Licensing WI LLC v. Atlas Copco Tools & Assembly Sys.*
*LLC*,
    No. 2022-1303, 2024 WL 89395 (Fed. Cir. Jan. 9, 2024)..................59

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000) ..............................................48, 61, 62

*XY, LLC v. Trans Ova Genetics, LLC*,
    890 F.3d 1282 (Fed. Cir. 2018) ...........................................................21

*Yeda Rsch. v. Mylan Pharms, Inc.*,
    906 F.3d 1031 (Fed. Cir. 2018) ...........................................................39

## Other Authorities

Fed. Cir. R. 28(j) .....................................................................................26

## **STATEMENT OF RELATED CASES**

Pursuant to Federal Circuit Rule 47.5, the undersigned counsel states that no other appeal from the same *inter partes* review was previously before this or any other appellate court. The undersigned counsel is aware of the following pending cases that may directly affect or be directly affected by this Court's decision in the pending appeal:

- *MemoryWeb, LLC v. Samsung Elecs. Co.*, 3:22-cv-03776 (N.D. Cal.)

- *MemoryWeb, LLC v. Apple Inc.*, 3:21-cv-09839 (N.D. Cal.)

- *MemoryWeb, LLC v. Samsung Elecs. Co.*, 24-1322 (Fed. Cir.)

- *MemoryWeb, LLC v. Unified Patents, LLC*, 24-1328 (Fed. Cir.)

- *Apple Inc. v. MemoryWeb, LLC*, 23-2361 et al. (Fed. Cir.)

## **COUNTER-STATEMENT OF THE ISSUES**

1.     Nothing in the '228 and '658 patent claims or specification requires all the elements of the claimed "people view" to be displayed simultaneously.  Did the Board correctly refuse to read such a requirement into the conjunctive term "and"?

2.     Neither the plain meaning of "responsive to" nor any intrinsic evidence requires "direct" causation that precludes any additional user input.  Did the Board correctly decline to read this negative limitation into MemoryWeb's open-ended claims?

3.     Does the Board's upholding claims 18-19 of the '228 patent in Samsung's IPR create issue preclusion for claims 7-12 of the '658 patent, despite the Board's explicitly stating that it was not deciding whether the prior art renders those claims unpatentable, and even though the Board's final, unappealed determination that claims 18-19 of the '228 patent are unpatentable in a separate IPR deprived Samsung of the opportunity and incentive to obtain appellate review on those claims?

4.     Does substantial evidence support the Board's factual findings regarding the content of the prior art and motivation to combine, and did the Board adequately explain the reasons for its decision?

# INTRODUCTION

In two detailed final written decisions, the Board thoroughly analyzed and considered the arguments of both parties, weighed the evidence, and concluded that the claims on appeal would have been obvious.  MemoryWeb presents numerous issues, but its arguments ultimately either ask this Court to reweigh the evidence or rest on strained claim constructions the Board rightly rejected.

On claim construction, MemoryWeb's attempt to read a simultaneous display requirement into the "people view" term lacks support in the intrinsic evidence.  MemoryWeb also misidentifies the issue in suggesting that the Board read "responsive to" as merely "subsequent to."  Instead, the Board recognized that MemoryWeb's exceedingly narrow construction—importing a negative limitation precluding any additional user actions—lacks support in the claim language or specification, and thus properly rejected it.  The Board did not err.

MemoryWeb's allegation of inconsistent findings between the '228 and '658 patent decisions ignores the Board's express statement in the '228 patent decision that it was not deciding patentability.  Moreover, the Board's discussion of claims 18-19 of the '228 patent is no basis for disturbing its well-supported findings on the '658 patent.  Issue preclusion does not apply where a party had no opportunity or incentive to obtain review, which is the case here because the Board held claims 18-19 unpatentable in a separate IPR—a determination MemoryWeb does not

challenge in its appeal from that IPR, rendering any dispute over claims 18-19

moot.  Indeed, MemoryWeb's appeals here are moot as to many of the claims

decided below given the limited scope of its appeals of the parallel IPRs.

Finally, the Board addressed MemoryWeb's fact-bound motivation to

combine arguments, and substantial evidence supports its findings.  The Court

therefore should affirm.

<u>**COUNTER-STATEMENT OF THE CASE**</u>

## I.   The MemoryWeb Patents

This consolidated appeal concerns two MemoryWeb patents sharing a

common specification: U.S. Patent Nos. 10,621,228 and 10,423,658 (collectively,

"the MemoryWeb patents").  The MemoryWeb patents describe a purported

invention related to managing digital files, particularly photographs.  Appx188

(Title); Appx240 (1:16-19).  This field was crowded and well-developed by the

earliest possible priority date for both patents, June 9, 2011—about two decades

after the introduction of digital cameras to consumers, and over a decade after the

arrival of mobile phones with cameras.  Appx260; Appx7106; Appx7639; *see also*

Appx189; Appx451; Appx772.[1]  Indeed, Samsung's expert, Dr. Philip Greenspun,

---

[1] In litigation, MemoryWeb identified an even later priority date of February 28, 2014, for both patents.  Appx7106; Appx451.

has been working with computer-generated maps since the 1980s and with web-based systems for managing digital photographs since 1994.  Appx7639; Appx772.

The MemoryWeb patents state that, "[p]rior to the invention of digital photography, people tended to share photos by displaying printed copies in frames and albums," often with "significant details (people, location, event, etc.) to preserve the memory of that particular occasion" written on the back.  Appx240 (1:23-39).[2]  They assert that "[w]hat is needed to complement the widespread availability of digital files is a medium that allows people to organize, view, preserve and share these files with all the memory details captured, connected and vivified via an interactive interface."  *Id.* (1:56-60).

The MemoryWeb patents' purported invention is based on "associating digital tags with digital files" (i.e., photos or videos) and using the tags to store, organize, and display the files.  Appx188 (Abstract); Appx240 (1:67-2:16).  The MemoryWeb patents describe organizing digital files such as digital photographs in a variety of "application views" in an "interactive interface."  Appx246 (13:37-62).  For example, the "map view" shown in Figure 41 displays individual or groups of photos as "photo thumbnails . . . on the map."  Appx254-255 (29:32-34, 32:28-29).

---

[2] The '228 and '658 patents share a common specification.  For simplicity, Samsung provides citations to the '658 patent.

4



Appx230 (Fig. 41).  When the user selects a thumbnail, the user interface displays

a "location view" as shown in Figure 34.  Appx254 (29:32-36).



Appx223 (Fig. 34) (excerpted).  Another view is the "people view" shown at the

top of Figure 32 ("Multiple People Application View"), which shows a thumbnail

image and name for all the people that were created within the application.

Appx250 (22:43-57).  There is also a "person view" shown at the bottom of Figure

32 ("Single People Profile Application View"), which includes a person's name

and photos associated with that person.  Appx250-251 (22:63-23:10).



## A.    The '228 Patent

Claim 1 recites a method for causing various views to be displayed

responsive to inputs.  First, claim 1 recites "causing a map view to be displayed"

"responsive to a first input."  Appx330 (35:33-34).  This "map view" includes an

"interactive map" and two "location selectable thumbnail image[s]."  *Id.* (35:33-

39).

Claim 1 also recites causing a "first location view" to be displayed

"responsive to an input" indicative of the selection of a first thumbnail and causing

a "second location view" to be displayed "responsive to an input" indicative of

selection of a second thumbnail.  *Id.* (35:40-60).  Each "location view" includes a

location name associated with the location and "a representation of at least a portion of one digital file" associated with the location. *Id.*

Finally, claim 1 recites "causing a people view to be displayed" "responsive to a second input that is subsequent to the first input." Appx330 (35:61-63). The "people view" includes a first thumbnail image which includes a small image of the face of the person and a name associated with the person next to the small image. *Id.* (35:64-36:11).

Dependent claim 18 recites "causing a first person view to be displayed" "responsive to an input" indicative of a selection of the first thumbnail image (which is associated with a first person). Appx331 (38:7-12). The "first person view" includes a name and a representation of the images associated with the first person. *Id.*

## B.    The '658 Patent

Claim 1 recites displaying a "map view" with location thumbnails and displaying "location view[s]" responsive to a click or tap on the thumbnails, similar to claim 1 of the '228 patent. Appx257 (35:13-36:7). Unlike the recited "map view" in the '228 patent, the "map view" of the '658 patent is displayed "responsive to a click or tap" of a "location selectable element" shown in an "application view." *Id.* (35:20-27). Furthermore, each location thumbnail on the map view has a "count value" image partially overlapping the location thumbnail

that indicates the number of photographs and videos associated with that location. *Id.* (35:29-53).

Dependent claim 5 recites "displaying a people view" "responsive to a click or tap" of a "people selectable element." *Id.* (36:28-33). Similar to the "people view" recited in claim 1 of the '228 patent, the "people view" of claim 5 includes displaying two-person thumbnail images each with an associated name. *Id.* (36:32-49). Dependent claim 7 recites displaying a "first person view" similar to the "first person view" recited in claim 18 of the '228 patent. *Id.* (36:56-62).

## II.     The Prior Art Discloses the Allegedly-Novel "People View"

The Board relied on multiple combinations of prior art references to cancel the challenged claims. Two references are at issue in this appeal: Okamura (Appx887-995) and Belitz (Appx996-1007).

### A.     Okamura

Okamura discloses a user interface for "managing contents such as image files" based on locations and people associated with the content. Appx887 (Abstract); Appx908; Appx928.

Figure 41 of Okamura shows a "map view screen" that displays location-based clusters on an interactive map. Appx982 ([0354]).



Appx928 (Fig. 41). Okamura explains that when a cluster map is selected, "a

listing of contents belonging to the selected cluster map is displayed in a content

listing display area 782." Appx982 ([0356]). The content listing display area 782

includes information such as the number of contents associated with that cluster

map (170 in the example, Yokohama, illustrated in Figure 42). *Id.*

Okamura discloses another view showing "index images generated on the

basis of face information" in Figure 21. Appx971 ([0234]).



Appx908 (Fig. 21). In this view, the index screen shows "an image representing a face cluster, for example, a thumbnail image of each of [the] faces included in contents belonging to the face cluster" and "pieces of information 433 related to the thumbnail image 432." Appx972 ([0246]-[0247]). In this example, there are 28 items of information related to the person associated with thumbnail image 432. *Id.* ([0247]).

Okamura discloses another view in Figure 24 that includes a content playback screen. Appx973 ([0261]).

10



Appx911 (Fig. 24).  The content playback screen 460 shown in Figure 24 is displayed "when the mouse is placed over the face portion" of the content playback screen 450 shown in Figure 23.  Appx973 ([0261]).  Content playback screen 460 includes image 461, a magnified form of the face image, and a content listing display area 462 including a listing of contents in the face cluster.  *Id.*; *see also* Appx911 (Fig. 24).

## B.    Belitz

Belitz describes a "user interface . . . configured to display a map and to display at least one marked location on said map."  Appx996 (Abstract).  Belitz discloses a user interface that displays a map 409 with thumbnail images displayed at various locations, as shown below.

11



Fig. 4a     Fig. 4b

Fig. 4c

Appx999 (Figs. 4a-c). Each thumbnail (410a-d) is associated with a location; for example, a thumbnail may correspond to a photograph that was taken at those coordinates. Appx1004 ([0052]). The thumbnails also carry a number indicator (for example, the number "6" labeled 412 in Figure 4a), which indicates how many graphical objects are associated with that location. *Id.* ([0054]).

When the user selects a thumbnail (for example, thumbnail 410c in Figure 4b), Belitz displays visual representations associated with the selected thumbnail in a pop-up window 413 shown in Figure 4c. Appx1005 ([0060]). "The popup

window shows at least some of the visual representations 411 of the graphical object 410c." *Id.* One of the images (414) in the scrollable list 415 is shown in a larger size than the others. *Id.*

## III.     The Board Proceedings ('228 Patent)

Samsung challenged claims 1-19 of the '228 patent based on obviousness over Okamura in view of Belitz. Appx7101. The Petition includes both an overview of Okamura in view of Belitz and a limitation-by-limitation mapping that expressly incorporates the overview. Appx7107 nn.2-3. Samsung maintained that "no formal claim constructions are necessary." Appx7101-7102. In its Patent Owner's Preliminary Response, MemoryWeb agreed that no construction is necessary. Appx8890. In its Institution Decision, the Board likewise determined that "no claim terms require express construction in order to determine whether or not to institute *inter partes* review." Appx9645.

In its Patent Owner's Response, however, MemoryWeb argued for the first time that the "plain and ordinary meaning" of "responsive to" requires a "cause-and-effect relationship" whereby a second event occurs "automatically" in relation to a first event without "requiring further user interaction." Appx9681-9683; Appx9687-9689. MemoryWeb argued that Okamura does not teach the "people view" of claim 1 because its method includes additional steps between the "second input" and the displaying of the "people view." Appx9690-9691. MemoryWeb

13

similarly argued that claim 18 would not have been obvious given the additional steps between the "people view" and the "first person view" in Okamura. Appx9732. MemoryWeb also argued that under its "claim construction analysis," Okamura does not disclose the "people view" of claim 1 because the recited "people view" requires simultaneous display of the first and second names. Appx9684.

In its Reply, Samsung explained that the plain and ordinary meaning of "responsive to" does not preclude additional user actions. Appx10170-10172; Appx10174-10178. Samsung also explained that the claimed "people view" does not require the simultaneous display of the "first name" and the "second name." Appx10172-10174.

In its Final Written Decision ("'228 Decision"), the Board found claims 1-17 unpatentable but concluded that Samsung had not shown that claims 18-19 were unpatentable. Appx10. The Board rejected MemoryWeb's argument that claim 1 requires displaying a first name associated with a first person "responsive to a second input," finding instead that the plain language required display of a "***people view***" "responsive to a second input." Appx67. The Board characterized MemoryWeb's proposed construction of "responsive to" as "overly narrow." Appx68. Although the Board explicitly did not accept MemoryWeb's construction, it found that even under that narrow construction, "claim 1 would not

14

require display of a first name associated with a first person" when the second input is executed. *Id*. The Board reasoned that, "[a]lthough Patent Owner is correct that nothing in the specification of the '228 patent requires any user input beyond the second input to display the first name, nothing in the specification precludes it either." *Id*. Without construing "responsive to" in the context of claim 1, the Board found it did "not require display of a first name associated with the first person when the second input is executed." *Id.* The Board also rejected MemoryWeb's claim construction argument regarding the simultaneous showing of the first and second names, finding that the claim language "do[es] not require that the first name and second name be displayed in the same view." Appx69.

For claim 18, the Board found that Samsung's "Petition does not adequately address how selecting a thumbnail in Figure 21 . . . would result in the display of Figure 24," and noted that "[its] determination that the challenge to claim 18 in this proceeding fails because of a deficiency in the Petition ***should not be taken as a determination*** as to whether Okamura and Belitz render claim 18 unpatentable." Appx94 n.27.[3]

## IV.     The Board Proceedings ('658 Patent)

Samsung challenged claims 1-15 of the '658 patent based on five grounds: (1) obviousness over Okamura and Belitz (claims 1-15); (2) obviousness over

---

[3] All emphasis herein is added unless noted otherwise.

Okamura, Belitz and Rasmussen (claims 3-4); (3) obviousness over Okamura,

Belitz, and Gossweiler (claims 6-12); (4) obviousness over Okamura, Belitz, and

Yee (claims 8-9 and 11-12); and (5) obviousness over Okamura, Belitz,

Gosseweiler and Yee (claims 8-9 and 11-12). Appx446. The Petition includes

both an overview of Okamura in view of Belitz and a limitation-by-limitation

mapping that expressly incorporates the overview. Appx452 nn.2-3. Samsung

maintained that "no formal claim constructions are necessary." Appx446-447. In

its Patent Owner's Preliminary Response, MemoryWeb agreed that no construction

is necessary. Appx3412. In its Institution Decision, the Board determined that "no

claim terms require express construction in order to determine whether or not to

institute *inter partes* review[.]" Appx4123.

In its Patent Owner's Response, MemoryWeb changed tack. It purported to

"agree[] that the claims should be afforded their plain and ordinary meaning, but

offer[ed] a discussion of that meaning for certain terms and phrases," including

that "responsive to" requires a "direct causal connection." Appx4160-4170.

MemoryWeb also argued that claim 5 requires simultaneous display of the first and

second names. Appx4172-4175.

In its Reply, Samsung pointed to its expert's testimony that a person of

ordinary skill in the art ("POSITA") would understand that "the term 'responsive

to' merely requires that the second event happen 'subsequent to' the first event

16

based on a combination of user interaction and software implementation" and explained that "responsive to" does not preclude additional user actions. Appx5719-5724 (citing Appx4497 (42:21-44:22)).  Samsung also highlighted portions of the '658 patent's written description that contemplate intermediate user actions between a first and second event.  *Id*.  Samsung also explained that claim 5 does not require the simultaneous display of the "first name" and the "second name."  Appx5724-5727.

In its Final Written Decision ("'658 Decision"), the Board found claims 1-13 unpatentable but upheld the patentability of claims 14-15.  Appx106.  The Board rejected MemoryWeb's proposed construction of "responsive to," which requires a "direct cause and effect relationship . . . without any additional actions."  Appx118-121.  Instead, the Board credited Samsung's expert testimony and explicitly "adopted" his definition, holding that "'responsive to' merely requires that the second event happen 'subsequent to' the first event based on a combination of user interaction and software implementation."  Appx119-122.  The Board also held that claim 5 "does not require that the first and second names be displayed at the same time."  Appx122-124.

## V.    The Parallel Apple IPR Proceedings

Apple separately challenged the '658 and '228 MemoryWeb patents in parallel IPR proceedings.  *Apple Inc. v. MemoryWeb LLC*, IPR2022-00031, Paper

17

No. 1 (Oct. 30, 2021); *Apple Inc. v. MemoryWeb LLC*, IPR2022-00033, Paper No. 1 (Nov. 3, 2021). The Board's Final Written Decisions in those proceedings find all of the claims of these MemoryWeb patents unpatentable. *Apple Inc. v. MemoryWeb, LLC*, IPR2022-00031, Paper No. 85 at 101 (PTAB Dec. 8, 2023) ("Apple '228 Final Written Decision"); *Apple Inc. v. MemoryWeb, LLC*, IPR2022-00033, Paper No. 39 at 84-85 (PTAB May 18, 2023) ("Apple '658 Final Written Decision"). After filing its opening brief in these appeals, but before this response brief was due, MemoryWeb filed its opening brief on appeal from the Apple IPRs, challenging the Board's decisions as to only claim 15 of the '228 patent and claims 3-4 and 8-12 of the '658 patent. *See Apple Inc. v. MemoryWeb, LLC*, No. 23-2361, ECF No. 33 at 59-68, 68-79 (Fed. Cir. July 2, 2024).

## <u>SUMMARY OF THE ARGUMENT</u>

The Board correctly construed the claims. The "people view" limitation's plain language does not require simultaneous display, and nothing in the specification warrants departing from it. The Board also correctly rejected MemoryWeb's construction of "responsive to," which goes beyond requiring mere causality and improperly imposes a negative limitation precluding additional user actions. Nothing in the MemoryWeb patents supports such a radical departure from the plain meaning of "responsive to." Further, substantial evidence supports the Board's factual findings under its correct constructions.

The Board's decisions were entirely consistent. Although the Board reached different outcomes on similar claims in different IPRs, it explained why: its decision upholding claims 18-19 of the '228 patent was not based on the technical merits, but on a purported deficiency in the Petition. In any event, the debate over those claims is moot because MemoryWeb did not appeal the Board's determination that they are unpatentable in the separate Apple IPR. Thus, Samsung had neither the ultimate ability (due to the injury in fact requirement) nor incentive to obtain review on those claims, and the Board's decision as to those claims cannot provide a basis for disturbing the Board's well-supported findings on the '658 patent.

Finally, the Board addressed MemoryWeb's teaching away arguments, and substantial evidence supports its findings rejecting them. The Court should decline to reweigh the evidence.

## ARGUMENT

## I.    Standard of Review

Obviousness is a legal conclusion based on underlying factual findings. *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966). The scope and content of the prior art is a question of fact, *Acoustic Tech., Inc. v. Itron Networked Sols., Inc.*, 949 F.3d 1366, 1373 (Fed. Cir. 2020), which this Court reviews for substantial evidence, *e.g.*, *Intelligent Bio-Systems, Inc. v. Illumina*

*Cambridge Ltd.*, 821 F.3d 1359, 1366 (Fed. Cir. 2016).  Substantial evidence

"means such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) (citing

*Consol. Edison Co. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229-30 (1938)).

The Court reviews the Board's claim construction based on intrinsic

evidence de novo.  *Weber, Inc. v. Provisur Techs., Inc.*, 92 F.4th 1059, 1062 (Fed.

Cir. 2024).  However, "[w]hen the PTAB "look[s] beyond the patent's intrinsic

evidence and . . . consult[s] extrinsic evidence, such as expert testimony,

dictionaries, and treatises, those underlying findings amount to factual

determinations" that the Court reviews for "substantial evidence."  *Knowles Elecs.*

*LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1362 (Fed. Cir. 2018) (internal

quotations omitted).

## II.    MemoryWeb's Appeal Is Moot as to Claims 1-14, 16-17 of the '228 Patent and Claims 1-2, 5-7, 13 of the '658 Patent

The Board invalidated claims 1-19 of the '228 patent and claims 1-15 of the

'658 patent in the Apple IPRs.  Apple '228 Final Written Decision at 101; Apple

'658 Final Written Decision at 84-85.  Although MemoryWeb appealed from those

decisions, its brief in those consolidated appeals challenges the Board's decisions

regarding only claim 15 of the '228 patent and claims 3-4 and 8-12 of the '658

patent.  *Apple Inc. v. MemoryWeb, LLC*, No. 23-2361, ECF  33 at 59-65, 68-76

(Fed. Cir. July 2, 2024).  MemoryWeb has therefore waived its appeal rights as to

those claims, having an "immediate issue-preclusive effect on any pending or co-pending actions involving the patent[s]." *XY, LLC v. Trans Ova Genetics, LLC*, 890 F.3d 1282, 1294 (Fed. Cir. 2018); *see also United Therapeutics Corp. v. Liquidia Techs.*, *Inc.*, 74 F.4th 1360, 1372 (Fed. Cir. 2023).  Therefore, the Board's unpatentability conclusion as to all other claims (claims 1-14, 16-17 of the '228 patent and claims 1-2, 5-7, 13 of the '658 patent) in the Apple IPRs is final, and MemoryWeb's appeal from the Samsung IPRs is moot as to those claims.

For the Court's convenience, the following table shows which of the remaining claims are potentially implicated by each of MemoryWeb's arguments:

| Issue | Pertinent Remaining Claims |
|---|---|
| Whether "people view" requires simultaneous display (Bl.Br. 24-31, 43-44) | '228 Patent Cl. 15<br>'658 Patent Cls. 8-12 |
| Whether "responsive to" precludes additional user input (Bl.Br. 31-42, 45-46) | '228 Patent Cl. 15<br>'658 Patent Cls. 8-12[4] |
| Whether Okamura discloses the "first person view" of claims 7-12 of the '658 patent (Bl.Br. 46-61) | '658 Patent Cls. 8-12 |
| MemoryWeb's "teaching away" argument (Bl.Br. 61-68) | '228 Patent Cl. 15<br>'658 Patent Cls. 3-4, 8-12 |
| MemoryWeb's alleged additional motivation to combine errors in the '228 patent IPR (Bl.Br. 68-71) | '228 Patent Cl. 15 |

[4] Claims 3-4 of the '658 patent contain the term "responsive to," but not in the context of a "people view," and MemoryWeb's arguments concerning "responsive to" are expressly limited to "claims 5-12 of the '658 patent," Bl.Br. 43, of which only claims 8-12 remain live.

| Issue | Pertinent Remaining Claims |
|---|---|
| MemoryWeb's alleged additional motivation to combine errors in the '658 patent IPR (Bl.Br. 71-72) | '658 Patent Cls. 3-4, 8-12 |

## III.   The Board Properly Construed the MemoryWeb Patents

### A.   The Proper Construction of "People View" Does Not Require Displaying Two Names and Two Thumbnails Simultaneously

The Board properly rejected MemoryWeb's construction as overly narrow and inconsistent with the '228 and '658 patents.  MemoryWeb's construction of "people view" requires the additional limitation that "the people view *simultaneously* display" the first thumbnail and name and the second thumbnail and name.  Bl.Br. 24.  Because nothing in the MemoryWeb patents requires such simultaneous display, the Court should reject MemoryWeb's construction.

As an initial matter, the claim language's plain meaning does not require simultaneous display.  The claim language merely recites displaying a "people view" responsive to a click or tap and requires that the "people view" includes various pieces of information, including the first and second thumbnails and names.  Appx330 (35:61-36:11); Appx257 (36:28-49).  It does not impose any timing requirements as to when these pieces of information are displayed, beyond being responsive to the click or tap.  *Id.*

Contrary to MemoryWeb's argument, the word "and" does not require the *simultaneous* display of all the elements listed.  Bl.Br. 27.  Displaying both a first

and second thumbnail and name in response to a click or tap does not require all the elements to appear simultaneously. There is no reason, for example, why an embodiment in which the names are displayed by fading in one at a time would be outside the scope of the claims. Indeed, this Court has observed that the word "and" does not necessarily require the "simultaneous existence" of the listed elements. *See Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 520 F.3d 1358, 1361 (Fed. Cir. 2008). Instead, the claim language must be read in context of the intrinsic evidence, and to a lesser degree, extrinsic evidence. *Id.* at 1361-63. Here, the intrinsic and extrinsic evidence show that simultaneous display of the first and second names is not required.

*Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 949 (Fed. Cir. 2016), does not support MemoryWeb's argument to the contrary. *Medgraph* did not address whether "and" requires anything to be "simultaneous." *Id.* The dispute there turned on whether the claim required the ***presence*** of both computer and telephone capabilities for receiving and transmitting data. *Id.* This Court held that, in accordance with the plain meaning of "and," the claim required both capabilities. *Id.* at 949-50. Here, there is no dispute that "people view" includes both the first and second thumbnails and names; the only dispute is whether the first and second sets must be displayed ***simultaneously***, an issue not addressed in *Medgraph*. Similarly, MemoryWeb's reference to the disjunctive "or" in the '658 patent's

claim 1 preamble is immaterial because there is no dispute that "people view" includes all elements listed—only the unrelated issue of whether the elements must be ***displayed simultaneously*** is in dispute.  Bl.Br. 27.

Further, the claims' use of "adjacent to" supports Samsung's construction, not MemoryWeb's.  The relevant claims require that each name be displayed "adjacent to" the respective thumbnail image (*i.e.*, the first name is displayed adjacent to the first thumbnail image, and the second name is displayed adjacent to the second thumbnail image).  Appx257 (36:38-40, 36:46-49); Appx330 (36:1-3, 36:9-11).  Yet, the claims do not require adjacent display of the first and second thumbnail sets (*i.e.*, a "first person selectable thumbnail image" and a "second person selectable thumbnail image" are both included in the "people view" but there is no requirement to be "adjacent to" one other), indicating that the claim broadly covers both displaying them separately and displaying them simultaneously.  *See* Appx257 (36:34-37, 36:41-44); Appx330 (35:64-67, 36:4-8).

MemoryWeb's argument that the claim language "responsive to" supports importing a simultaneous display requirement into the claims relies on its strained construction of "responsive to," *see* Bl.Br. 28, which is incorrect as explained separately in Argument § II.B, below.  Because "responsive to" does not preclude additional user action, the possibility that additional user action might in some

embodiments be used to display the second name and thumbnail image does not support reading a simultaneous display requirement into the claims.

MemoryWeb's only purported support in the specification for its position, Figure 32 and its accompanying description, does not justify limiting the claims to this embodiment. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005) ("[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments."). Although Figure 32 shows one "people view" displaying both a first and second name, nothing in the figure or accompanying text purports to disclaim an embodiment where the thumbnails and names are rendered one at a time. Appx221 (Fig. 32); Appx250 (22:43-57 (describing Fig. 32 as illustrating that various numbers of people or names may be displayed, people can be sorted in various orders, and various filters may be applied without limitation)). In fact, MemoryWeb's expert, Dr. Glenn Reinman, could not say that, if a name was momentarily hidden from view in Figure 32, then Figure 32 would no longer meet the "people view" limitation. Appx10252-10253 (57:24-58:14).

Furthermore, MemoryWeb admitted that when a claimed view includes certain elements, there is no requirement that all elements must be displayed simultaneously. Specifically, at the oral hearing, MemoryWeb's counsel indicated that "when the claims refer to the views . . . it's not necessarily what you actually

see on the screen.  Instead, the view refers to what is delivered by the application to the user interface device."  Appx6948 (27:3-6); *see also* Appx6948-6949 (27:15-28:17) (comparing claimed view to results of Internet search where "search results are never displayed all on the upper portion of [the] screen" and the user "always has to scroll down to see the search results").  Borrowing MemoryWeb's words, the second name may not be "actually shown on the screen" at the same time as the first name, and the user may have to take another action such as clicking or "scroll[ing] down" to see the second name, but it would still be true that "[a]ll of the content is delivered."  Appx6948-6949 (27:20-28:10).  This admission thus undermines MemoryWeb's construction.

The Board correctly declined to read MemoryWeb's simultaneous display requirement into the claims, and this Court should do the same.

## B.    "Responsive to" Does Not Preclude Additional User Actions

The Board properly construed the "responsive to" limitations, explicitly adopting Samsung's proposed construction in the '658 proceeding and rejecting MemoryWeb's overly narrow construction in both.  Appx10; Appx67-69; Appx106; Appx118-122.[5]  MemoryWeb describes its construction of "responsive

---

[5] Pursuant to Federal Circuit Rule 28(j), Samsung notes that this same claim construction issue is briefed in companion case No. 24-1322.  The sections addressing this issue are not entirely duplicative between the cases, although there is significant overlap in the arguments.

to" as requiring a "cause-effect relationship between a click or tap of a particular selectable element and displaying a particular view." Bl.Br. 31.  However, in substance MemoryWeb advances a much narrower construction requiring a "direct causal connection," thereby precluding any additional actions such as additional clicks or taps.  *See* Appx4166-4171; *see also* Appx9681-9683 (arguing that "responsive to" requires that "a second event occurs 'automatically' in relation to a first event without 'requiring further user interaction'"); Appx5719-5720; Appx10170-10171.

Samsung agrees that "responsive to" involves a cause-and-effect relationship.  But as the Board properly recognized, the true dispute turns on whether "responsive to" requires a ***direct*** cause-and-effect relationship— precluding any additional events or user actions, as MemoryWeb proposes—or permits them, consistent with the plain meaning of "responsive to" which encompasses both direct and indirect responsiveness, as Samsung maintains.  *See* Appx120-122.  MemoryWeb's construction is overly narrow and nothing in the common written description of the MemoryWeb patents supports such a deviation from the plain meaning.

MemoryWeb's "***direct*** cause-effect relationship" is not the plain meaning of "responsive to."  Under MemoryWeb's interpretation, one person's mailing a letter in reply to a friend would not be "responsive to" the friend's writing that person a

letter because the friend not only wrote the letter but put it in an envelope, affixed a stamp, and mailed the envelope containing the letter.  MemoryWeb does not even contend that the '658 patent or '228 patent contains any lexicography or disavowal that would narrow the plain meaning of "responsive to."  *See* Bl.Br. 31-42.  That failure bars MemoryWeb's attempt to graft onto the claims its incorrect negative limitation preventing additional user actions.  *See Sisvel Int'l S.A. v. Sierra Wireless, Inc.*, 81 F.4th 1231, 1236 (Fed. Cir. 2023).

### 1.    The Board Did Not Equate "Responsive to" with Merely "Subsequent to" or Exclude a Cause-and-Effect Relationship

As an initial matter, MemoryWeb is wrong (Bl.Br. 32-33) that the Board's interpretation of "responsive to" means only "subsequent to."  The Board found that "responsive to" requires not only that the "second event happen 'subsequent to' the first event" but that it do so "***based on a combination of user interaction and software implementation***," just as Samsung argued and Dr. Greenspun explained.  Appx122 (quoting Appx5720 (citing Appx4497 (42:21-44:22); Appx4760 (108:20-109:12))).  The Board did not find—and Samsung never contended—that "responsive to" requires ***only*** a simple temporal relationship where the second event happens after the first event.  Rather, the Board's construction requires that "a combination of user interaction and software implementation" is the ***cause*** of this temporal relationship.  *See id.*  Thus, the

Board did not give "responsive to" the same meaning as "subsequent to," and MemoryWeb's claim differentiation arguments are inapposite.

The Board's construction is therefore entirely consistent with Dr. Greenspun's explanation that a mere temporal relationship is "not what [he] said." *Compare* Appx6705 (17:11-19), *with* Appx122 (crediting Dr. Greenspun's testimony and adopting definition requiring a combination of user interaction and software implementation). Far from being an "admission" that somehow bolsters MemoryWeb's construction, this testimony simply confirms that MemoryWeb's arguments fundamentally misinterpret what Samsung argued and what the Board held. Both acknowledged a cause-and-effect relationship, but rejected MemoryWeb's requirement for a "direct" cause-and-effect relationship that excludes any additional user actions. *See* Appx120-122.

Importantly, MemoryWeb's construction does not merely apply a cause-and-effect relationship. It imposes a negative limitation—precluding additional actions between a second event in response to a first event. Yet, "[n]egative limitations added during claim construction must find support either in the specification or the prosecution history," and MemoryWeb's construction does not. *See Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc.*, 946 F.3d 1367, 1381 (Fed. Cir. 2020). Indeed, MemoryWeb does not contend that the MemoryWeb patents' common written description contains lexicography or disavowal that would narrow the plain

29

meaning.  Importing such a negative limitation would be particularly inappropriate here, where the relevant claims are introduced by the open-ended transition phrase "comprising," which, "absent some special circumstance or estoppel" permits "the presence of elements or steps in addition to those specifically recited in the claim." *Vivid Techs., Inc. v. Am. Sci. Eng'g, Inc.*, 200 F.3d 795, 811 (Fed. Cir. 1999).

Thus, the Board was right not to import that negative limitation into the claims.  *See* Appx68 (noting that, although nothing in the specification requires "any user input beyond the second input to display the first name, nothing in the specification precludes it either").

## 2.     The Specification Supports the Board's Construction

Contrary to MemoryWeb's suggestion (Bl.Br. 36-39), the specification fully supports the Board's construction of "responsive to."  For example, the '228 patent contemplates that display of a "people view," "responsive to" a "second input," as required by claim 1, permits additional user actions.  *See* Appx330 (35:61-36:11).

As Dr. Greenspun testified, Appx10355-10357 (¶¶ 4-6), and as Samsung's Reply explains, Appx10171 (citing Appx294 (Fig. 32); Appx323 (22:59-67)), "[i]n the '228 patent, the people view that is ultimately shown to the user entails not only the initial pressing of 'People' (1401) (shown in red below), but further the additional selection of a desired display order via a drop-down list (1402) (shown

30

in purple below).”



Similarly, Figure 6 of the '658 patent shows an example of a "people view" showing arrows that, upon selection, display additional thumbnails of people included in the "people view."  Appx6106-6107 (¶ 9) (citing Appx242 (6:20-26); Appx195 (Fig. 6)).  Figure 13 shows another example of a "people view" that includes a scroll bar and shows +,- controls that display/hide names of people included in the "people view."  Appx6107 (¶ 9) (citing Appx242 (6:54-61); Appx202 (Fig. 13)).  In adopting Samsung's construction in the '658 patent's proceeding, the Board specifically credited this portion of Dr. Greenspun's testimony.  Appx122 ("We credit Dr. Greenspun's testimony regarding claim construction for 'responsive to a click or tap' and adopt this definition as our own." (citing Appx6105-6108 (¶¶ 7-11))).

MemoryWeb's expert, Dr. Reinman, did not dispute the possibility of having the intermediate drop-down selection in the above example.  During his deposition,

he repeatedly acknowledged that a user's selection in the drop-down box was a "possible" action between the user's pressing of "People" and the claimed "people view" display in the '228 patent. *See* Appx10225-10227 (30:19-32:3); Appx10221-10222 (26:23-27:17); Appx10247 (52:3-23); Appx10250-10251 (55:6-56:1). Dr. Reinman also agreed that other user actions, such as scrolling, might be required by the user to display the thumbnails, and that this functionality is permitted under the term "responsive to." Appx5982-5983 (78:3-79:3); *see also* Appx6106-6107 (¶¶ 8-9).

In light of both experts' testimony, and after crediting Dr. Greenspun, the Board concluded the proper construction of "responsive to" does not preclude additional user actions and appropriately construed "responsive to" as requiring that the second event happen subsequent to the first event based on a combination of user interaction and software implementation. Appx67-68; Appx122. The Board's construction thus adheres to the specification, and its reliance on expert testimony confirming this intrinsic evidence was not erroneous. *See HTC Corp. v. Cellular Commc'ns Equip., LLC,* 877 F.3d 1361, 1368 (Fed. Cir. 2017) (affirming Board's claim construction where it relied on expert declarations regarding the scope of a claim term).

### 3.    The Board Did Not Err in Noting MemoryWeb's Admission During the Oral Hearing

The Board's '658 Decision properly (1) considers the parties arguments and the intrinsic and extrinsic evidence, (2) recognizes MemoryWeb's mischaracterization of Samsung's position, (3) credits Dr. Greenspun's testimony, (4) and adopts his definition for "responsive to a click or tap." Appx118-122. Because the Board's thorough analysis was sufficient, MemoryWeb's arguments (Bl.Br. 39-41) about the Board's passing reference to enablement cannot establish prejudicial error. *See In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004) ("[T]o prevail the appellant must not only show the existence of error, but also show that the error was in fact harmful because it affected the decision below.").

In any event, the Board did not err in considering MemoryWeb's admission at the oral hearing. Claim 1 of the '658 patent, in relevant part, recites that "***responsive to*** a click or tap of the first location . . . ***displaying*** . . . a scaled replica of ***each*** of the digital photographs and videos in the first set of photographs and videos." Appx257 (35:54-60). Applying MemoryWeb's construction of "responsive to" therefore would require that ***each*** photograph in a set of photographs must be displayed based on only a single click or tap of the first location, even where the set "include[s] more than 150 photographs and videos." Appx121. Yet, MemoryWeb's counsel admitted that there are "possibly situations where there are more photos than can be ***displayed*** on the actual screen of the

device," requiring additional user input to display all the photos. Appx121 (quoting Appx6948 (27:3-8)); *see also* Appx6948 (27:21-24) ("I think it's helpful to think of, for example, when I'm online and I go to Google and I enter a search term, for example. The search results are never displayed all on the upper portion of my screen. ***I always have to scroll down to see the search results***."). That statement directly undercuts MemoryWeb's negative construction precluding such additional scrolling, and it was not error for the Board to consider it.

The Board must interpret claims in a way that makes sense in light of the specification, and it would not make sense to interpret "responsive to" in a matter unsupported by—and indeed contrary to—the written description and surrounding claim language. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) ("What is claimed by the patent application must be the same as what is disclosed in the specification."); *see also Renishaw PLC v. Marposs Societa' Per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

Despite the passing reference to enablement, the Board's claim construction ultimately did not depend on construing claims to preserve their validity under Section 112. Rather, in recognizing that MemoryWeb's construction conflicts with the written description's teachings, the Board properly interpreted the claims in the

34

context of the written description, exactly as *Phillips* requires.  MemoryWeb's

admission simply confirms that, as explained above, the MemoryWeb patents

contain examples where a user would have to take additional steps to access the

photographs in a given view.  *See* Appx242 (6:20-26); Appx195 (Fig. 6); Appx242

(6:54-61); Appx202 (Fig. 13).  By allowing additional user actions as might be

necessary to practice the claim, the Board's construction is "'practicable,' [] based

on sound claim construction principles, and does not revise or ignore the explicit

language of the claims." *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d

1356, 1365 (Fed. Cir. 2001).  Nor does its construction import unsupported

limitations to preserve validity—which is the overarching concern with construing

a claim to preserve its validity.  *See id.*  The Board consideration of MemoryWeb's

admission at the oral hearing was therefore proper.

### C.    The Board Correctly Held That Additional Attributes of the '228 Patent's "People View" Did Not Need To Display Immediately "Responsive To" the Second Input

Contrary to MemoryWeb's argument (Bl.Br. 42), the Board did not err in

holding that claim 1 (and therefore dependent claim 15) of the '228 patent "does

not require that the first name be displayed 'responsive to' the second input."

Appx67-68.  Although the claim requires a "people view" to "include[]" two

names and thumbnails, it does not require everything the "people view" includes to

be displayed instantly when the view is displayed.  Rather, the claim's plain

language is broad enough to encompass a "people view" that *includes* all four elements, but where certain elements are not immediately visible. MemoryWeb admitted as much at the oral hearing, stating: "when the claims refer to the views . . . it's not necessarily what you actually see on the screen. Instead, the view refers to what is delivered by the application to the user interface device." Appx6948 (27:3-6); *see also* Appx6948-6949 (27:15-28:10).

Because the application can deliver things to the user interface device that are not displayed immediately, it follows that the "people view" can still "include[]" the four recited elements without their being displayed in response to the same input. Appx67-68. This conclusion independently supports the Board's judgment concerning the '228 patent.

*        *        *

In sum, the claim constructions on which MemoryWeb bases its patentability arguments are wrong. Further, MemoryWeb does not argue that the prior art fails to satisfy the Board's correct interpretation of the claims; but rather it challenges the Board's findings based on only its position that (1) the "people view" requires simultaneous display of the two names, and (2) "responsive to" precludes additional user action. Bl.Br. 43-46.

However, even if the Court were to adopt MemoryWeb's narrow reading of its claims, at most, it should remand for the Board to assess obviousness. Samsung

36

independently argued that the "responsive to" and "people view" limitations would have been obvious under MemoryWeb's constructions. *E.g.*, Appx5740-5744; Appx10179-10183. The Board did not reach these arguments because it rejected MemoryWeb's constructions. Thus, if this Court adopts MemoryWeb's constructions, with which Samsung certainly disagrees, it should remand for the Board to apply them in the first instance. *See, e.g.*, *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1045 (Fed. Cir. 2017).[6]

## IV. Substantial Evidence Supports the Board's Finding That Okamura Discloses the "First Person" View in Claims 7-12 of the '658 Patent

### A. Okamura Discloses Displaying the "First Person View" Under the Correct Construction

As explained above in Section II.B, *supra*, the Board adopted the correct construction for "responsive to," which does not preclude additional user actions. Under this construction, Okamura discloses displaying the "first person view."

Specifically, Okamura discloses that selecting a face-based thumbnail image in the "people view" causes the display of contents included in the face cluster. In Figure 21, Okamura discloses a "people view" that includes a first person selectable thumbnail image. Appx908 (Fig. 21); Appx972 ([0246]-[0247]).

---

[6] MemoryWeb argued before the Board that these reply arguments were improper, but that argument is meritless because "a petitioner is entitled to respond to new arguments made in a patent owner response." *Axonics, Inc. v. Medtronic, Inc.*, 75 F.4th 1374, 1380 (Fed. Cir. 2023). That issue is best left for the Board on remand.



People selectable element

People view

First person selectable thumbnail image

Appx908 (Fig. 21); *see also* Appx846-852 (¶¶ 156-64).

Through a series of steps that are initiated by selecting a first person selectable thumbnail image in Figure 21, a "first person view" shown in Figure 24 is displayed. *See* Appx972-973 ([0250]-[0261]). "FIG. 24 shows a content playback screen 460 that is displayed when the mouse is placed over the face portion included in the face box 458 on the content playback screen 450 shown in FIG. 23." Appx973 ([0261]). The content playback screen in Figure 24 includes a "content display area 441," which includes a scaled replica of each digital file associated with the selected face. *Id.*; Appx856-857 (¶ 169). Therefore, substantial evidence supports the Board's finding in the '658 Decision that Okamura discloses the claimed "first person view."

Finally, MemoryWeb's complaint (Bl.Br. 59-61) that the Board "ignored" its argument that Okamura does not satisfy Samsung's construction does not justify vacatur. This allegedly-overlooked argument was raised for the first time in MemoryWeb's sur-reply and consists of two sentences, neither of which purports to explain why Okamura's "multiple intervening views, decisions, or inputs," *see* Appx6471, do not satisfy the Board's construction permitting causation by "***a combination of user interaction and software implementation***," Appx122. This argument is precisely the type of "skeletal or underdeveloped argument" that this Court has deemed forfeited, and the Court should do so here as well. *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009). In any event, the Board is not required to "explicitly discuss every fleeting reference or minor argument." *Yeda Rsch. v. Mylan Pharms, Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018). Having already found that "responsive to" requires only "that the second event happen 'subsequent to' the first event based on a combination of user interaction and software implementation," Appx122 (quoting Appx5720), the Board sufficiently explained its rationale for permitting multiple steps within the meaning of "responsive to."

## B.    MemoryWeb's Issue Preclusion Arguments Lack Merit

MemoryWeb attempts to avoid the substantial evidence supporting the Board's finding by arguing that the Board's findings on claims 18-19 of the '228

patent were inconsistent.  Bl.Br. 46-54.  However, the Board expressly did not

decide the patentability of claims 18-19 in the '228 Decision.  Further, the Board's

analysis of claims 18-19 is not entitled to issue preclusive effect given Samsung's

lack of injury in fact and incentive to appeal that determination when the Board

had determined those claims unpatentable in a separate proceeding.

>    **1.    The Board Expressly Stated in the '228 Decision That It Did
>          Not Decide Whether Okamura and Belitz Render Claim 18
>          Unpatentable**

One of the most basic requirements of issue preclusion is that the issue was

"actually decided" in a prior action.  *United Access Techs., LLC v. Centurytel*

*Broadband Servs. LLC*, 778 F.3d 1327, 1331 (Fed. Cir. 2015).  A tribunal does not

actually decide an issue when it makes an "explicit statement[] that it was ***not***

deciding the" issue.  *Jones v. United States*, 846 F.3d 1343, 1363 (Fed. Cir. 2017)

(original emphasis); *see also id.* ("'Courts in subsequent actions have honored

express statements by the court deciding the first action that a particular issue was

not being decided.'" (quoting 18 Charles Alan Wright et al., Federal Practice and

Procedure § 4416 (2d ed. 2016))).

Here, the Board explicitly stated that "[its] determination that the challenge

to claim 18 in this proceeding fails because of a deficiency in the Petition ***should***

***not be taken as a determination as to whether Okamura and Belitz render claim***

***18 unpatentable***."  Appx94 n.27.  Because the Board expressly reserved the

patentability of claim 18's subject matter over Okamura and Belitz, its decision is not preclusive on that issue. *Jones*, 846 F.3d at 1363.

### 2.    Samsung's Inability To Obtain Appellate Review on Claims 18-19 Prohibits Application of Issue Preclusion

Issue preclusion does not attach to an unreviewable judgment. *E.g.*, *Kircher v. Putnam Funds Trust*, 547 U.S. 633, 646-47 (2006); *Penda Corp. v. United States*, 44 F.3d 967, 972-73 (Fed. Cir. 1994) ("It is axiomatic that a judgment is without preclusive effect against a party which lacks a right to appeal that judgment."). Here, MemoryWeb ignores that the claims 18-19 of the '228 patent were invalidated in a separate IPR proceeding filed by Apple on the same day that the Board issued the '228 Decision. Apple '228 Final Written Decision at 101 . Moreover, although MemoryWeb filed an appeal from that decision, claim 15 is the only claim of the '228 patent that MemoryWeb challenges on appeal. *Apple Inc. v. MemoryWeb, LLC*, No. 23-2361, ECF 33 at 21-22, 59-65 (Fed. Cir. July 2, 2024). Thus, the determination that claims 18-19 of the '228 patent are unpatentable is final and no longer subject to review.

To bring and maintain an appeal as to claims 18-19 of the '228 patent, Samsung would have needed to establish "an injury in fact" that is "not conjectural or hypothetical." *Apple Inc. v. Qualcomm Inc.*, 992 F.3d 1378, 1381 (Fed. Cir. 2021); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (explaining that the requirement that "[t]he parties must continue to have a personal stake in the

41

outcome" "subsists through all stages of federal judicial proceedings, trial and appellate" (quotation marks omitted)).  In view of the Board's unappealed unpatentability conclusions for claims 18-19, Samsung could hardly demonstrate a "substantial risk of future infringement" liability as to those claims, or any other cognizable Article III injury, certainly as of the date MemoryWeb filed its brief not challenging the Board's decision on them.  *See JTEKT Corp. v. GKN Auto. Ltd.*, 898 F.3d 1217, 1221 (Fed. Cir. 2018).  Thus, the Board decision on those claims in Samsung's IPR of the '228 patent is an unreviewable judgment that lacks preclusive effect.  *Kircher*, 547 U.S. at 646-47.

### 3.    The Unpatentability of Claims 18-19 Removed Any Incentive for Samsung To Appeal

The Board's unappealed determination that claims 18-19 of the '228 patent are unpatentable independently makes issue preclusion inappropriate under "the lack-of-incentive-to-litigate exception."  *See Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1312 (2019) (holding that an exception to issue preclusion applied where a party had more incentive to continue litigating the same issue in an appeal of a second IPR than in a first non-appealed IPR proceeding).  Given the Board's final determination of unpatentability as to claims 18-19, Samsung does not face any risk of infringement liability for those claims, and thus lacked any incentive to file a cross-appeal.  *See Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 721 F.3d 1330, 1338 (Fed. Cir. 2013)

("[S]uits based on cancelled claims must be dismissed.").  It would be inequitable and absurd to suggest that Samsung was required to invest the resources to bring a cross-appeal and burden this Court with additional briefing for claims as to which there is no live controversy, merely to prevent the Board's findings in the '228 patent IPR proceeding from becoming a basis for reversing the Board's findings as to claims 7-12 of the '658 patent.

### C.     The Board's Decision Finding Claims 7-12 of the '658 Patent Unpatentable Is Not Arbitrary and Capricious

As an initial matter, MemoryWeb's arguments here for claim 7 are moot because MemoryWeb failed to appeal the Board's decision holding claim 7 unpatentable in the Apple '658 Final Written Decision.  *See* Section II, *supra*. While MemoryWeb's substantive arguments in its brief (Bl.Br. 46-54) address claim 7 alone, to the extent MemoryWeb has preserved this argument for claims 8-12 by referencing those claims in the headings of its brief, the Board's decision finding these claims unpatentable is not arbitrary and capricious.

The Board's explicit statement that its '228 patent decision "should not be taken as a determination as to whether Okamura and Belitz render claim 18 unpatentable," Appx94 n.27, shows that MemoryWeb's allegation (Bl.Br. 53-54) of inconsistent conclusions is meritless.  Although the Board may sometimes need to explain reaching "opposite results" on "the same technical issue," *Vicor Corp. v.*

*SynQor, Inc.*, 869 F.3d 1309, 1312 (Fed. Cir. 2017), the Board here did not reach inconsistent results.

The Court must affirm the Board's decision if its explanation is readily discernable from a relatively concise discussion. *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 905 (Fed. Cir. 2018) (affirming Board decisions where they cited to "relevant portions of [petitioner's] briefing that explain[ed] how the prior art discloses the relevant claim limitations"). The Board's decision is readily discernible here. It concluded that a skilled artisan "would have combined the teachings of Okamura and Belitz in the manner proposed in the challenge to claims 7 and 10," and noted that MemoryWeb's argument on these claims "rests on its overly narrow construction of the claim term 'responsive to' which we rejected." Appx159. The Board's reasoning is readily understandable, and its decision supported by substantial evidence. *See* Appx158-159 (citing Appx973 ([0261]-[0262]); Appx908 (Fig. 21); Appx911 (Fig. 24); Appx856-858 (¶¶ 168-170)).

To the extent even more was required, the Board's note that it was ***not*** deciding the merits in the '228 patent's proceeding explained why it was reaching a different outcome. Appx94 (n.27). In particular, the Board's note signals that its determination in the '228 patent's IPR rested on a purported deficiency in the '228 Petition, rather than a determination about the disclosures of Okamura and

Belitz. *See id.* That makes sense because the same panel had several months

earlier (July 31, 2023) determined that Okamura and Belitz render obvious similar,

though not identical, claim limitations in the '658 patent's proceeding. The

Board's note explains why the two decisions can be reconciled. MemoryWeb

simply ignores the Board's explanation on this point.

## V.    Substantial Evidence Supports the Board's Motivation-To-Combine Determination in the '228 and '658 Decisions

In both Decisions, the Board thoroughly analyzed the arguments and

evidence and made factual determinations that a POSITA would have found it

obvious to combine Okamura and Belitz. Appx90-91; Appx133-145. The Court

should decline MemoryWeb's invitation to wade into the deeply factual issues

concerning motivation to combine and Okamura's alleged teaching away. *In re

NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011) ("This court does not reweigh

evidence on appeal, but rather determines whether substantial evidence supports

the Board's fact findings.").

**A.    Substantial Evidence Supports the Board's Findings That a POSITA Would Have Been Motivated To Combine Okamura with Belitz To Obtain Multiple Benefits**

**1.    Samsung Identified Multiple Ways To Combine Okamura with Belitz**

In both Petitions, Samsung proposed three different ways of incorporating Belitz's thumbnails into Okamura.[7]  Appx7112-7120; Appx457-463.  The first combination replaces the cluster maps in Okamura's "map view" (Fig. 41) with Belitz's thumbnail images.  Appx7112-7114; Appx457-458.

---

[7] Samsung's petitions initially characterized these three ways as two combinations, the second of which involved two alternatives for incorporating Belitz's geographic "map view" into Okamura (either into the view shown in Figure 18 or the "map view" shown in Figure 41).  Appx7112-7120; Appx457-463.  After institution, the parties treated these arguments as three combinations total.  *See* Appx9727 n.6; Appx10183-10191; Appx4205 n.7; Appx5728-5736.  In the '228 Decision, the Board considered the second and third combinations together as the "second combination" but addressed the merits of only the first combination.  Appx91.  In the '658 Decision, the Board addressed the three combinations separately.  Appx134-146.  MemoryWeb does not argue that the Board's organization of these different ways of combining the prior art was erroneous or prejudicial.



Appx7114; Appx458.  Samsung showed that a POSITA would have been motivated to pursue this combination because this way of organizing digital files with location selectable thumbnails would have provided "a good view of what location is associated with what," Appx1002 ([0002]), and achieved Okamura's objective of allowing the contents belonging to each cluster to be "easily grasped by the user," Appx970 ([0215]).

The second combination replaces Okamura's "cluster map display area 414" shown in Figure 18 with Belitz's geographic "map view".  Appx7117-7119; Appx461-462.



Fig. 4b

Appx7119; Appx462. Samsung showed that a POSITA would have been motivated to combine Okamura and Belitz in this way to allow the user to view the content captured at specific locations more quickly without having to click on a cluster. Appx7666 (¶ 93).

The third combination is not at issue in this appeal. *See* Bl.Br. 65-67. Except where noted, Samsung addresses the first combination, which the Board addressed in both Decisions.

### 2. The Board Credited Samsung's Evidence That the Relevant Ways of Combining Okamura and Belitz Have Multiple Benefits

In both Decisions, the Board correctly found, based on substantial evidence, that the Okamura-Belitz combination offers multiple benefits that would have outweighed the purported disadvantages and motivated a POSITA to pursue the combination. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n.8 (Fed. Cir. 2000) ("The fact that the motivating benefit comes at the expense of another benefit . . . should not nullify its use as a basis to modify the disclosure of one

reference with the teachings of another. Instead, the benefits, both lost and gained, should be weighed against one another."). In the '228 Decision, the Board found that claims 1-17 of the '228 patent are unpatentable over the first combination and did not address the second and third combinations. Appx78-95. In the '658 Decision, the Board found that claims 1-13 of the '658 patent are unpatentable over the first and second combinations. Appx133-168.

*In the '228 Decision*, the Board found that, even if it were to "assume that none of Belitz's images were maps, the proposed combination has other advantages that a person of ordinary skill in the art would have been capable of weighing against any benefits lost." Appx90 (citing Appx10183-10185). The Board explicitly agreed with Samsung's arguments on this point, citing Samsung's Reply, which explains—with supporting testimony from Dr. Greenspun and citations to the references themselves— that (1) the combination "enhances a user experience of 'discern[ing] between the various objects' by providing 'a good view of what location is associated with what,'" Appx10184 (citing Appx7663 (¶ 89); *see also* Appx958; Appx1002 ([0002])), and (2) in the combination, a user can "easily understand which location [each thumbnail] is associated with," Appx10185 (citing Appx10363 (¶ 24); Appx999 (Figs. 4a-4b)).

The Board also found that, even though the combination would replace Okamura's cluster maps, "Belitz does not suffer from the same geographical

49

deficiencies as the references discredited by Okamura." Appx90 (citing

Appx10183-10185; Appx10363 (¶ 24). As the arguments the Board credited

explain, Belitz's thumbnails are placed directly on the associated location on the

map, so the user can easily understand which images are associated with which

locations. Appx10185; Appx10363 (¶ 24). Belitz's Figure 4b explicitly shows this

benefit:



**Fig. 4b**

Appx999 (Fig. 4) (excerpt).

Further, as Samsung explained with support from Dr. Greenspun, and the

Board agreed, a POSITA would have recognized that there are circumstances

where the benefits of Belitz's approach outweigh those of Okamura's cluster maps.

"[A] POSITA pursuing the combination would have nevertheless been capable of . . . recognizing that the benefits of viewing location-specific thumbnail images may be achieved in one instance and those of viewing location-specific cluster maps may be achieved in another."  Appx10184 (citing Appx10361-10362 (¶¶ 20-22)); *see also* Appx88 (Board citing this argument); Appx90 (same). Substantial evidence, including Dr. Greenspun's testimony and the disclosures of Okamura and Belitz discussed above, support these findings.

The Board also independently determined that "the proposed combination provides more than just previewing pictures," providing a further improvement over Okamura.  Appx90 (citing Appx10188).  Specifically, the proposed combination "allows the user to quickly associate multiple preview pictures with multiple locations on the map without having to individually navigate through each of the clusters."  Appx10187-10188 (citing Appx10365 (¶ 28), Appx7663-7664 (¶ 89)).  The Board also credited Dr. Greenspun as "adequately explain[ing]" why a POSITA would have found it "obvious to combine Okamura's second embodiment with its FACE index screen" to do more than preview pictures. Appx90 (citing (Appx10188); *see also* Appx7692-7696 (¶¶ 133-38); Appx10365-10366 (¶ 29)).

***In the '658 Decision***, the Board similarly found that, even if the first proposed combination replaced Okamura's "map" features, it "adds functionality . . . to preview pictures associated with a given location without having to click on individual clusters" and "allows users to preview pictures for multiple locations on the map." Appx141 (citing Appx5732); Appx6113 (¶¶ 22-24). The Board also found that, because Belitz's thumbnails are photographs associated with a location, Belitz conveys more information to the user in the "map view" than the prior art discussed in Okamura, which displays only generic markers on a map. Appx141 (citing Appx1004 ([0052] ("The graphical object 410 has a visual representation 411 which in this embodiment is a photograph associated with the location."))).

The Board rejected MemoryWeb's argument that Okamura's picture preview functionality obviated a motivation to combine, crediting Dr. Greenspun's testimony that the combination would have resulted in "added functionality that allows a user to preview pictures associated with a given location" to allow the user to more "clearly see the associations." Appx142 (citing Appx6114-6115 (¶ 24); Appx796-797 (¶¶ 88-89)). Substantial evidence, including Dr. Greenspun's testimony and the disclosures of Okamura and Belitz discussed above, supports the Board's findings about the first proposed combination.

The Board also found that the second proposed combination would have been obvious because—even though the second combination would have replaced Okamura's "cluster maps"—it offers an enhanced user experience "by providing a 'good view of what location is associated with what.'" Appx145 (citing Appx457-465 (itself quoting Appx1002 [0002])). The Board credited Samsung's showing that combination improves upon Okamura because Belitz's thumbnail images appear directly on the map, allowing a user to quickly and directly perceive the geographical associations between images. Appx460; Appx6117-6118 (¶¶ 30-31). The disclosures of Okamura and Belitz and Dr. Greenspun's testimony discussing those disclosures, and why a POSITA would be motivated to combine, are more than sufficient to meet the substantial evidence standard.

## B. The Board Sufficiently Addressed and Rejected MemoryWeb's "Teaching Away" Arguments

Contrary to MemoryWeb's assertion (Bl.Br. 61-68), the Board addressed its teaching away arguments. First, the Board directly addressed and rejected MemoryWeb's argument, finding that the disadvantages Okamura discusses do not apply to Belitz. Appx90. Second, even if the combination removed one benefit of Okamura's approach, substantial evidence supports the Board's finding that the Okamura-Belitz combination provides sufficient benefits regardless of any purported drawbacks.

1.    **The Board Properly Addressed Okamura's Statements About the Related Art and Found That Belitz Does Not Suffer from the Purported Scaling Problems Described in Okamura**

According to MemoryWeb, using a single map instead of Okamura's cluster maps limits the amount of information that can be conveyed.  Bl.Br. 62.  The Board directly addressed this argument and concluded that this problem does not apply to Belitz.  *See* Appx90; Appx140-141.

In the '228 Decision, the Board found that "Belitz does not suffer from the same geographical deficiencies as the references discredited by Okamura." Appx90 (citing Appx10185-10186); Appx10363-10364 (¶¶ 24-26)).  Notably, MemoryWeb's expert, Dr. Reinman, testified that Belitz "shows the association of at least some pictures with the geographic location on the map depending on how many thumbnails it's currently presenting."  Appx87 (citing Appx10302 (107:10-22)).  As a result, in contrast with the related art discussed in Okamura, "it is not difficult to grasp the geographical correspondence between digital files in Belitz because, for example, a user looking at Belitz's Fig. 4b can easily understand which location the thumbnail 410b is associated with and which location the thumbnail 410c is associated with."  Appx10185.



Fig. 4a                    Fig. 4b

Appx999 (Figs. 4a-4b).

In the '658 Decision, the Board similarly rejected MemoryWeb's argument that the Okamura-Belitz combination eliminates the "map" features of Okamura and would not convey geographical information. Appx140-141. The Board cited MemoryWeb's own expert Dr. Reinman's admission that "Belitz 'shows the association of at least some pictures with the geographic location on the map.'" Appx140-141 (quoting Appx5854 (107:10-22)). Relying on the references and Dr. Greenspun's testimony, the Board also found multiple similarities between Belitz's thumbnail images and Okamura's cluster maps, making them "functionally equivalent": "(1) both Belitz's thumbnail images and Okamura's clusters are associated with a given location, (2) both are displayed on the interactive map, and (3) both are dynamically generated/modified based on user interaction including zooming in/out on the map." Appx141 (quoting Appx459); *see also* Appx796 (¶ 88) (citing Appx1002 ([0004])).

Thus, the Board directly addressed MemoryWeb's arguments concerning the problems supposedly caused by replacing Okamura's "cluster maps," concluding that these problems do not apply to Belitz. Further, because the Board identified specific benefits of the combination and credited Samsung's evidence, this case is unlike *Chemours*, where the Board only went as far as finding the proposed modification "plausible." *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, 4 F.4th 1370, 1375–77 (Fed. Cir. 2021).[8] In sum, MemoryWeb's disagreement with the Board's factual findings does not warrant vacatur or reversal. *See Intelligent Bio-Sys.,* 821 F.3d at 1366-67.

### 2.   The Purported Disadvantage Would Not Preclude a Motivation To Combine

Not only did the Board disagree that Okamura's disparaging statements about prior art apply to Belitz, it also found that there would have been motivation to combine *even if* the proposed combination had the same disparaged feature. *Medichem, S.A. v. Rolabo, S.L.*, 437 F.3d 1157, 1165 (Fed. Cir. 2006) ("[A] given course of action often has simultaneous advantages and disadvantages, and this does not necessarily obviate motivation to combine.").

---

[8] *Google LLC v. Conversant Wireless Licensing S.A.R.L.* is even farther afield from the facts here. 753 F. App'x 890, 895 (Fed. Cir. 2018). There, the Board erred because it did not even discuss in its final written decision an argument that was central to its institution decision. *Id.* at 895.

In the '228 Decision, the Board held that "[w]e agree with Petitioner that even if we assume that none of Belitz's images are maps, the proposed combination has other advantages that a person of ordinary skill in the art would have been capable of weighing against any benefits lost." Appx90. Similarly, in '658 Decision, the Board held that "even if . . . the proposed combination eliminates Okamura's 'map' features . . . added functionality provided by the use of Belitz's thumbnails outweighs the potential loss of any map information provided by Okamura's cluster maps." Appx141; *see also* Section VI.B, *supra* (discussing the combination's benefits found by the Board). The Board therefore recognized that, despite any purported loss of benefits provided by Okamura, the combination with Belitz provides other advantages that support the motivation to combine.

In sum, "the Board considered [MemoryWeb's] arguments regarding motivation to combine, weighed them against the competing evidence and argument, and concluded that despite [MemoryWeb's] contentions, one of skill in the art would have been motivated to combine" Okamura with Belitz. *Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1317 (Fed. Cir. 2017) (internal citation omitted). Substantial evidence—namely, disclosures from both Okamura and Belitz and testimony from both experts—supports the Board's finding that the loss of cluster maps of varying scales would not have outweighed the benefits to be

gained from the combination.  Section V.A.2, *supra*; *see also In re NTP*, 654 F.3d at 1292 ("This court does not reweigh evidence on appeal, but rather determines whether substantial evidence supports the Board's fact findings.").

### C.  MemoryWeb's Remaining Complaints Regarding the '228 Decision Are Groundless

Contrary to MemoryWeb's assertion (Bl.Br. 68-71), the benefits of the Okamura-Belitz combination were not conclusory, unsupported, or inadequately weighed against alleged disadvantages in the '228 Decision.

### 1.  The Board Identified Numerous Advantages Offered by the Combination

As explained above, the Board identified numerous advantages offered by the combination with Belitz and weighed them against the disadvantages, citing and discussing specific evidence in the record.  The Board expressly stated: "***We agree with Petitioner that*** even if we assume that none of Belitz's images are maps, ***the proposed combination has other advantages***[.]"  Appx90 (citing Appx10183-10185).  Therefore, the Board expressly credited Samsung's arguments on the numerous advantages of the combination.  *See also* Section VI.B, *supra* (discussing advantages acknowledged by the Board).  The Board properly relied on Samsung's arguments because it explained its reasons for doing so and cited supporting evidence in its discussion of the argument.  *See* Appx87-90; *Outdry Techs. Corp. v. Geox S.p.A.*, 859 F.3d 1364, 1371 (Fed. Cir. 2017)

(affirming motivation to combine finding where the "Board engaged in reasoned decisionmaking and sufficiently articulated its analysis" despite relying on petitioner's arguments). Contrary to MemoryWeb's assertion (Bl.Br. 69), *In re Nuvasive*, 842 F.3d 1376, 1384-85 (Fed. Cir. 2016), is inapposite because the Board here thoroughly discussed the parties' arguments and evidence, weighed the potential advantages and disadvantages of the combination, and found that the advantages would have made the combination obvious. *See Wildcat Licensing WI LLC v. Atlas Copco Tools & Assembly Sys. LLC*, No. 2022-1303, 2024 WL 89395, at *4 (Fed. Cir. Jan. 9, 2024) (affirming that the Board's finding was reasonably discernable and supported by substantial evidence where the Board discussed the parties' arguments and cited related evidence).

MemoryWeb is also incorrect (Bl.Br. 69) that Samsung identified only one possible advantage offered by the combination. As summarized above, Samsung pointed out at least three advantages in its Reply, which the Board relied upon. *See* Appx90 (citing Appx10183-10185). The Board further credited Dr. Greenspun's testimony that the incorporation of Belitz's thumbnails into Okamura had the benefit of "added functionality that allows a user to preview pictures associated with a given location" in a manner that allows the user to more "clearly see the associations." Appx90 (citing Appx10187). The Board also held that the proposed combination provides "more than just previewing pictures," Appx90, such as

allowing the user to "quickly associate multiple preview pictures with multiple locations on the map without having to individually navigate through each of the clusters," Appx10187. MemoryWeb's assertion that Samsung identified only one advantage ignores the extensive discussion in the record.

Because the Board identified multiple advantages that would have motivated a POSITA to combine, and substantial evidence supports those findings, this Court should reject MemoryWeb's argument (Bl.Br. 69-70) that an already-existing advantage in Okamura would have nullified any motivation to combine.

### 2. The Board Adequately Weighed the Advantages and Disadvantages of the Combination in the '228 Decision

MemoryWeb's assertion that the Board did not weigh the advantages of the combination against its disadvantages disregards the Board's explicitly finding that "***even if we assume that none of Belitz's images are maps, the proposed combination has other advantages*** that a person of ordinary skill in the art would have been capable of ***weighing against any benefits lost***." Appx90 (citing Appx10183-10185; *Winner Int'l*, 202 F.3d at 1349 n.8). This finding necessarily weighs the purported disadvantages against the advantages.

The Board also credited Samsung's argument that "a POSITA pursuing the combination would have nevertheless" recognized "that the benefits of viewing location-specific thumbnail images may be achieved in one instance and those of viewing location-specific cluster maps may be achieved in another." Appx10184

(cited on Appx90).  The Board thus did not fail to consider the alleged benefits of Okamura's cluster maps, but rather found that both Okamura's approach and the Okamura-Belitz combination would be suitable options in different instances. Appx90-91.  That is sufficient support for its motivation-to-combine finding.  *Intel Corp. v. PACT XPP Schweiz AG*, 61 F.4th 1373 (Fed. Cir. 2023) ("[C]ontrary to the Board's suggestion, Intel never had to show that replacing Kabemoto's secondary cache with Bauman's secondary cache was an improvement in a categorical sense.  Intel just had to show that Bauman's secondary cache was a suitable option to replace Kabemoto's secondary cache." (internal citations, quotations omitted)).

### D.     MemoryWeb's Remaining Complaints Regarding the '658 Decision Lack Merit

MemoryWeb ignores (Bl.Br. 71-72) the Board's detailed factual analysis in the '658 Decision, attempting to manufacture legal errors where none exist.

In an analysis spanning seven pages (not including recitation of the parties' arguments), the Board weighed the benefits lost and gained by the combination against one another and concluded that a POSITA would have been motivated to replace Okamura's cluster map with Belitz's thumbnails.[9]  Appx140-147; Section IV.B*, supra*; *see also Winner Int'l*, 202 F.3d at 1349 n.8.

---

[9] Here, the Board addressed the first proposed combination of Okamura and Belitz.  *See* Appx134-143.

The Board did not rest its motivation-to-combine finding merely on MemoryWeb's failure to show that the proposed combination was "untenable," as MemoryWeb now suggests (Bl.Br. 71). It simply made an ordinary factual finding that the advantages of the proposed combination would have outweighed the disadvantages and that MemoryWeb's counterarguments failed to rebut Samsung's showing. Appx144-145.[10] Indeed, in the very paragraph MemoryWeb cites, the Board explicitly found that "the benefits of 'better managing digital content' and an enhanced user experience 'by providing a good view of what location is associated with what' outweigh any loss of geographical information." Appx145 (quoting Appx1002 ([0002])). The Board also incorporated its analysis weighing the advantages and disadvantages regarding the first combination. *Id.*

Finally, the Board considered and rejected MemoryWeb's argument regarding the alleged fundamental change to Okamura's system and Okamura's alleged preferences. Bl.Br. 71-72. The Board acknowledged that the second combination would result in the loss of Okamura's cluster maps but found that "the benefits of 'better managing digital content' and an enhanced user experience 'by providing a good view of what location is associated with what' outweigh any loss of geographical information." Appx145. Inherent in the Board's reasoning is its

---

[10] MemoryWeb's argument here applies to only the Board's finding on the second proposed combination of Okamura with Belitz. Appx143-145.

conclusion that Okamura's cluster maps are not so overwhelmingly fundamental to its system that a POSITA would never replace them. The Board considered testimony from both experts on this point, ultimately agreeing with Samsung and Dr. Greenspun. *See* Appx144 (citing Appx7664-7665 (¶ 91), Appx5846-5847 (99:3-100:18), Appx6117 (¶ 29)); Appx145 (quoting Appx5728); Appx958 ([0091]). The Board's path to that conclusion is readily discernable from its decision and supported by substantial evidence, including Dr. Greenspun's testimony and disclosures of Okamura and Belitz. *See Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 286 (1974) (noting that even a "decision of less than ideal clarity" will be upheld "if the agency's path may reasonably be discerned").

## <u>CONCLUSION</u>

For all these reasons, the Court should affirm the Board's decisions finding challenged claims unpatentable.

Dated:  August 9, 2024                    Respectfully submitted,

                                           /s/ Christopher Dryer
                                          Lauren A. Degnan
                                          Michael J. McKeon
                                          Christopher Dryer
                                          Irene Hwang
                                          **FISH & RICHARDSON P.C.**
                                          1000 Maine Avenue, S.W., Suite 1000
                                          Washington, DC 20024
                                          Telephone: (202) 783-5070

                                          Timothy Rawson
                                          **FISH & RICHARDSON P.C.**
                                          12860 El Camino Real, Suite 400
                                          San Diego, CA 92130
                                          Telephone: (858) 678-4378

                                          *Attorneys for Appellee*
                                          *Samsung Electronics Co., Ltd.*

## <u>CERTIFICATE OF SERVICE AND FILING</u>

I certify that on August 9, 2024, I electronically filed the foregoing

**RESPONSE BRIEF** of appellee using the Court's CM/ECF filing system.

Counsel for appellant were electronically served by and through the Court's

CM/ECF filing system per Fed. R. App. P. 25 and Fed. Cir. R. 25(e).


                         */s/ Christopher Dryer*
                         Christopher Dryer

## <u>CERTIFICATE OF COMPLIANCE</u>

The **RESPONSE BRIEF** of appellee is submitted in accordance with the

type-volume limitation of Fed. Cir. R. 32(b).  The brief contains 12,930 words,

excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R.

32(b)(2).  This brief has been prepared in a proportionally spaced typeface using

Microsoft® Word for Microsoft 365 in Times New Roman, 14 Point.


Dated:  August 9, 2024                       _/s/ Christopher Dryer_____
                                             Christopher Dryer