**Nos. 24-1315, -1316**

# United States Court of Appeals
# for the Federal Circuit

MEMORYWEB, LLC

*Appellant*

v.

SAMSUNG ELECTRONICS CO., LTD.,

*Appellee*

———————————

Appeals from the Patent and Trademark Office, Patent Trial and Appeal
Board in Case Nos. IPR2022-00221 and IPR2022-00222

———————————

**APPELLANT MEMORYWEB, LLC'S REPLY BRIEF**

JENNIFER HAYES
NIXON PEABODY LLP
300 S. Grand Avenue, Suite 4100
Los Angeles, CA 90071-3151
Tel: 213-629-6000

DANIEL SCHWARTZ
MATTHEW WERBER
ANGELO CHRISTOPHER
NIXON PEABODY LLP
70 W. Madison Street, Suite 5200
Chicago, IL 60602-4378
Tel: 312-977-4400

*Counsel for Appellant MemoryWeb, LLC*

# EXEMPLARY PATENT CLAIMS

## U.S. Patent No. 10,621,228

**Claim 1:**

1. A method comprising:

responsive to a first input, causing a map view to be displayed on an interface, the map view including:

> (i) an interactive map;
>
> (ii) a first location selectable thumbnail image at a first location on the interactive map; and
>
> (iii) a second location selectable thumbnail image at a second location on the interactive map;

responsive to an input that is indicative of a selection of the first location selectable thumbnail image, causing a first location view to be displayed on the interface, the first location view including (i) a first location name associated with the first location and (ii) a representation of at least a portion of one digital file in a first set of digital files, each of the digital files in the first set of digital files being produced from outputs of one or more digital imaging devices, the first set of digital files including digital files associated with the first location;

responsive to an input that is indicative of a selection of the second location selectable thumbnail image, causing a second location view to be displayed on the interface, the second location view including (i) a second location name associated with the second location and (ii) a representation of at least a portion of one digital file in a second set of digital files, each of the digital files in the second set of digital files being produced from outputs of the one or more digital imaging devices, the second set of digital files including digital files associated with the second location; and

responsive to a second input that is subsequent to the first input, causing a people view to be displayed on the interface, the people view including:

(i) a first person selectable thumbnail image including a representation of a face of a first person, the first person being associated with a third set of digital files including digital photographs and videos;

(ii) a first name associated with the first person, the first name being displayed adjacent to the first person selectable thumbnail image;

(iii) a second person selectable thumbnail image including a representation of a face of a second person, the second person being associated with a fourth set of digital files including digital photographs and videos; and

(iv) a second name associated with the second person, the second name being displayed adjacent to the second person selectable thumbnail image.

## U.S. Patent No. 10,423,658

**Claim 1:**

1. A computer-implemented method of displaying at least a portion of a plurality of (i) digital photographs, (ii) videos, or (iii) a combination of (i) and (ii), each of the digital photographs and videos being associated with a geotag indicative of geographic coordinates where the respective digital photograph or video was taken, the method comprising:

displaying an application view on a video display device including displaying a plurality of selectable elements, the plurality of selectable elements including a location selectable element;

responsive to a click or tap of the location selectable element, displaying a map view on a video display device, the displaying the map view including displaying:

(i) a representation of an interactive map;

(ii) a first location selectable thumbnail image at a first location on the interactive map, the first location being associated with the geographic coordinates of a first geotag, a first set of digital photographs and videos including all of the digital photographs and videos associated with the first geotag;

(iii) a first count value image partially overlapping the first location selectable thumbnail image, the first count value image including a first number that corresponds to the number of digital photographs and videos in the first set of digital photographs and videos;

(iv) a second location selectable thumbnail image at a second location on the interactive map, the second location being associated with the geographic coordinates of a second geotag, a second set of digital photographs and videos including all of the digital photographs and videos associated with the second geotag; and

(v) a second count value image partially overlapping the second location selectable thumbnail image, the second count value image including a second number that corresponds to the number of digital photographs and videos in the second set of digital photographs and videos;

responsive to a click or tap of the first location selectable thumbnail image, displaying a first location view on the video display device, the displaying the first location view including displaying (i) a first location name associated with the first geotag and (ii) a scaled replica of each of the digital photographs and videos in the first set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the first set of digital photographs and videos not being overlaid on the interactive map; and

responsive to a click or tap of the second location selectable thumbnail image, displaying a second location view on the video display device, the displaying the second location view including displaying (i) a second location name corresponding to the second geotag and (ii) a scaled replica of each of the digital photographs and videos in the second set of digital photographs and videos, the displayed scaled replicas of each of the digital photographs and videos in the second set of digital photographs and videos not being overlaid on the interactive map.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number**  2024-1315, 2024-1316

**Short Case Caption**  MemoryWeb, LLC v. Samsung Electronics Co., Ltd.

**Filing Party/Entity**  MemoryWeb, LLC

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 10/07/2024

Signature:  /s/ Jennifer Hayes

Name:  Jennifer Hayes

FORM 9. Certificate of Interest

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| MemoryWeb, LLC | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

FORM 9. Certificate of Interest

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable         ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑   Yes (file separate notice; see below)   ☐   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b).  **Please do not duplicate information.**  This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal.  Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable         ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# TABLE OF CONTENTS

TABLE OF CONTENTS ....................................................................... ii

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION ..............................................................................1

I.    THE BOARD ERRED IN CONSTRUING THE CLAIMS ..........................3

    A.    The Claimed "People View" Requires Two Names Displayed Simultaneously ....................................................................3

    B.    The Board Erred in its Construction of "Responsive To" ...................7

        1.    The Board's Construction Effectively Equates "Responsive To" and "Subsequent To" .................................7

        2.    The Board's Construction is Inconsistent with the Specification .........................................................................10

        3.    The Board Erred by Basing its Claim Construction on Purported Enablement Issues ...................................15

        4.    "Responsive To" Applies to All Elements of the "People View" .........................................................................17

II.    THE BOARD'S CLAIM CONSTRUCTION ERRORS REQUIRE REVERSAL OF ITS UNPATENTABILITY FINDINGS ...........................17

III.    THE BOARD'S FINDINGS FOR CLAIMS 7-12 OF THE '658 PATENT MUST BE REVERSED OR VACATED......................................18

    A.    The Board's Inconsistent Findings on the Same Technical Issue Cannot Stand .................................................................18

        1.    Samsung is Collaterally Estopped Based on the Non-Appealed '228 Decision ............................................19

        2.    The Board's Inconsistent Findings are Arbitrary and Capricious .........................................................................23

    B.    The Board Ignored a Critical Argument Regarding the "First Person View" and the "Responsive To" Requirement......................26

IV.    THE BOARD ERRED IN FINDING THAT IT WOULD HAVE BEEN OBVIOUS TO COMBINE OKAMURA AND BELITZ .............................28

    A.    Like the Board, Samsung Mischaracterizes MemoryWeb's Arguments Regarding Okamura's Teaching Away .............................28

B.    The Board Failed to Properly Weigh the Disadvantages to the
      Okamura-Belitz Combination ............................................................30

CONCLUSION AND RELIEF SOUGHT ............................................................33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alacritech, Inc. v. Intel Corp.*,
    966 F.3d 1367 (Fed. Cir. 2020) ................................................26, 27

*Apple Inc. v. Masimo Corp.*,
    No. 2022-1890, 2024 WL 137336 (Fed. Cir. Jan. 12, 2024)............................11

*Apple Inc. v. Qualcomm Inc.*,
    17 F.4th 1131 (Fed. Cir. 2021) ...........................................................20

*AstraZeneca AB v. Mylan Pharms. Inc.*,
    19 F.4th 1325 (Fed. Cir. 2021) ...........................................................30

*Aqua Prod., Inc. v. Matal*,
    872 F.3d 1290 (Fed. Cir. 2017) ....................................................19, 25

*BASF Corp. v. Enthone, Inc.*,
    749 F. App'x 978 (Fed. Cir. 2018) ....................................................24

*Carrum Techs., LLC v. Unified Pats., LLC*,
    No. 2020-2204, 2021 WL 3574209 (Fed. Cir. Aug. 13, 2021) .....................5, 11

*Chamberlain Grp., Inc. v. One World Techs., Inc.*,
    944 F.3d 919 (Fed. Cir. 2019) ...........................................................27

*Emerson Elec. Co. v. SIPCO, LLC*,
    745 F. App'x 369 (Fed. Cir. 2018) ....................................................24

*Ethicon LLC v. Intuitive Surgical, Inc.*,
    No. 2020-1600, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) ....................10

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
    582 F.3d 1288 (Fed. Cir. 2009) ...........................................................26

*Google LLC v. Hammond Dev. Int'l, Inc.*,
    54 F.4th 1377 (Fed. Cir. 2022) ...........................................................19

*Hartley v. Mentor Corp.*,
  869 F.2d 1469 (Fed. Cir. 1989) ...........................................................21

*Henny Penny Corp. v. Frymaster LLC*,
  938 F.3d 1324 (Fed. Cir. 2019) ...........................................................18

*In re Nuvasive, Inc.*,
  842 F.3d 1376 (Fed. Cir. 2016) ....................................................27, 31

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
  358 F.3d 898 (Fed. Cir. 2004) .............................................................15

*Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*,
  688 F.3d 1342 (Fed. Cir. 2012) ...........................................................32

*Koss Corp. v. Bose Corp.*,
  107 F.4th 1363 (Fed. Cir. 2024) .........................................................21

*Micron Tech., Inc. v. N. Star Innovations, Inc.*,
  855 F. App'x 679 (Fed. Cir. 2021)........................................................6

*Nystrom v. TREX Co.*,
  424 F.3d 1136 (Fed. Cir. 2005) ............................................................5

*Ohio Willow Wood Co. v. Alps S., LLC*,
  735 F.3d 1333 (Fed. Cir. 2013) ...........................................................19

*Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*,
  520 F.3d 1358 (Fed. Cir. 2008) ............................................................4

*Paice LLC v. Ford Motor Co.*,
  881 F.3d 894 (Fed. Cir. 2018) .............................................................24

*Pers. Web Techs., LLC v. Apple, Inc.*,
  848 F.3d 987 (Fed. Cir. 2017) .............................................................31

*Phillips v. AWH Corp.*,
  415 F.3d 1303 (Fed. Cir. 2005) .......................................................9, 15

*Power Integrations, Inc. v. Semiconductor Components Indus., LLC*,
    926 F.3d 1306 (Fed. Cir. 2019) .................................................22, 23

*SynQor, Inc v. Vicor Corp.*,
    988 F.3d 1341 (Fed. Cir. 2021) .................................................21

*SynQor, Inc. v. Vicor Corp.*,
    No. 2020-1259, 2022 WL 2187567 (Fed. Cir. June 17, 2022).........................21

*Thorne Rsch., Inc. v. Trustees of Dartmouth Coll.*,
    No. 2023-1055, 2023 WL 8707444 (Fed. Cir. Dec. 18, 2023) .........................21

*TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*,
    529 F.3d 1364 (Fed. Cir. 2008) .................................................14

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    595 F.3d 1340 (Fed. Cir. 2010) ...................................................6

*Uniloc USA, Inc. v. Motorola Mobility LLC*,
    52 F.4th 1340 (Fed. Cir. 2022) .................................................22

*United States v. Munsingwear, Inc.*,
    340 U.S. 36 (1950).............................................................21

*U.S. v. Olano*,
    507 U.S. at 733 (1993).........................................................26

*Vicor Corp. v. SynQor, Inc.*,
    869 F.3d 1309 (Fed. Cir. 2017) .............................................24, 30

*Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*,
    24 F.4th 1406 (Fed. Cir. 2022) ..................................................5

*Winner Int'l Royalty Corp. v. Wang*,
    202 F.3d 1340 (Fed. Cir. 2000) .................................................32

*Yeda Rsch. v. Mylan Pharms., Inc.*,
    906 F.3d 1031 (Fed. Cir. 2018) .................................................27

**Rules and Regulations**

Fᴇᴅ. R. Aᴘᴘ. P. 4(a)(3) ...............................................................20

**Other Authorities**

Restatement (Second) of Judgments § 28 (1982) ....................................................20

**INTRODUCTION**

Samsung's arguments highlight the Board's errors in broadly construing the "people view" in the MemoryWeb Patents. Samsung ignores its own expert's critical admission that the "adjacent to" claim language requires that each thumbnail and name be displayed simultaneously even though the word "simultaneously" does not appear in the claims. The people view must simultaneously display information for more than one person, as this is what distinguishes it from the separately claimed "person" views. Putting these concepts together, the only logical conclusion is that the claim requires both names displayed simultaneously. There is no dispute that Samsung's primary reference, Okamura, fails to disclose this limitation under the proper claim construction.

With respect to the Board's erroneous construction of "responsive to," Samsung agrees that the plain meaning requires causation, but characterizes the required level of causation as "indirect" rather than "direct." However, "indirect" causation does not meaningfully distinguish "responsive to" from "subsequent to," which is recited elsewhere in the claims of the MemoryWeb Patents. The Board's construction contemplates an unspecified number of intervening user inputs and software that break the chain of causation and are indistinguishable from "subsequent to." Appx122. That cannot be correct. The MemoryWeb Patents do not support the Board's broad construction of "responsive to."

1

Samsung also does not dispute that the Board's findings for claims 7-12 of the '658 Patent and claims 18-19 of the '228 Patent, which contain substantively identical limitations and for which Samsung relied on the same evidence, are irreconcilable. Attempting to avoid the preclusive effect of the '228 Decision it chose not to cross-appeal, Samsung claims it had no incentive to do so because claims 18-19 of the '228 Patent were invalidated in a separate IPR brought by Apple, which MemoryWeb appealed in *MemoryWeb, LLC v. Apple Inc.*, No. 24-1318 (hereinafter, "*Apple*"). Samsung's argument is, at best, disingenuous because at the time Samsung needed to cross-appeal, it knew MemoryWeb was appealing the *Apple* decision and that it could be reversed. The fact that MemoryWeb later limited its appeal in *Apple* does not excuse Samsung's failure to cross-appeal. And even if the Court finds that issue preclusion does not apply, the Board's inconsistent findings on the same technical issue are nonetheless arbitrary and capricious and cannot stand.

Samsung further continues its flawed assessment of the "related art" discussed in Okamura and MemoryWeb's arguments that led the Board to err when it found that Okamura does not teach away. The Board's findings rested upon mischaracterizations of MemoryWeb's arguments, an issue Samsung ignores. Although Samsung points to language in the Decision where the Board stated that "the proposed combination has other advantages," it does not dispute that the Board

2

failed to expressly identify any such "advantages" or properly weigh them against the disadvantages.

## I.     THE BOARD ERRED IN CONSTRUING THE CLAIMS

### A.     The Claimed "People View" Requires Two Names Displayed Simultaneously

Samsung's defense of the Board's erroneous construction for the "people view" ignores that Samsung's expert admitted that the phrase "adjacent to" in the claims requires that each person thumbnail and corresponding person name be displayed together *simultaneously*. Blue-Br., 27-28; Appx6712 (46:17-48:12). This critical admission establishes that the claims *do* require simultaneously displaying elements of the people view even though the word "simultaneously" does not literally appear in the claims.

Sidestepping the import of the "adjacent to" claim language, Samsung observes that "the claims do not require adjacent display of the first and second thumbnail sets." Red-Br., 24. That has no bearing on whether the two names are displayed simultaneously. Samsung does not dispute that (1) a "view" with only one thumbnail and one name would only provide information for a single *person* rather than *people* or (2) the MemoryWeb patents separately claim "person" views. Blue-Br., 26; Appx257 (36:56-62); Appx331 (38:7-13). The "people" view is distinguished from the "person" views in that the "people" view must provide

3

information for more than one person, i.e., at least two names and two thumbnails at the same time.

Samsung's further attempts to support the Board's construction are undermined by the express claim language. Claim 1 of the '228 Patent expressly requires that the first **and** second names are included in the same "people view." Appx330 (35:62-36:11). Samsung agrees that "there is no dispute that [the] 'people view' includes both the first **and** second thumbnails **and** names." Red-Br., 23 (emphases added); *see also id.*, 24 ("there is no dispute that 'people view' includes all elements listed"). Samsung's lone argument was to proffer authority construing "and" in the disjunctive to mean "or" in the context of those claims. Red-Br., 23; *Ortho-McNeil Pharm., Inc. v. Mylan Lab'ys, Inc.*, 520 F.3d 1358, 1361 (Fed. Cir. 2008). Here, there is no dispute that "and" in the MemoryWeb Patents is conjunctive and thus Samsung's authority is inapposite.

Samsung also argues that the claims do "not impose any timing requirements as to when these pieces of information are displayed, beyond being responsive to the click or tap." Red-Br., 22. But the fact that the claims specify that all four elements of the people view are displayed "responsive to" the same input—rather than separate inputs—reinforces MemoryWeb's construction. Blue-Br., 42. That is, even if "responsive to" were construed to allow intervening inputs between (i) the specified input or click/tap and (ii) displaying the people view, nothing in the claims

4

suggests that the elements of the people view can be displayed "responsive to" different user inputs.

While Samsung claims that intrinsic evidence "show[s] that simultaneous display of the first and second names is not required," it cannot identify any people view in the specification that only includes one name. Red-Br., 23. That is because all relevant examples in the specification are consistent with MemoryWeb's construction requiring simultaneous display of the view's elements in response to the user input. Blue-Br., 28-30; Red-Br., 25. Samsung thus resorts to imagining a hypothetical embodiment where "the names are displayed by fading in one at a time" and argues that this "would be outside the scope of the claims." Red-Br., 23. This example is irrelevant to claim construction because it is not disclosed in the MemoryWeb Patents. *Nystrom v. TREX Co*., 424 F.3d 1136, 1145-46 (Fed. Cir. 2005) (holding that "[b]roadening of the ordinary meaning of a term in the absence of support in the intrinsic record indicating that such a broad meaning was intended violates the principles articulated in *Phillips*"). None of Samsung's arguments change the fact that the Board's construction finds no support in the specification. *See Quanergy Sys., Inc. v. Velodyne Lidar USA, Inc.*, 24 F.4th 1406, 1416 (Fed. Cir. 2022) (finding "broader construction" that was "inconsistent with the specification . . . to be unreasonable"); *Carrum Techs., LLC v. Unified Pats., LLC*, No. 2020-2204,

2021 WL 3574209, at *6 (Fed. Cir. Aug. 13, 2021) (rejecting "broad reading of the claim phrase" that was "untethered to the specification").

If anything, Samsung's hypothetical involving names "fading in one at a time" highlights the absurdity of the Board's construction because it is inconsistent with the objective of MemoryWeb's patents. Red-Br., 23. For instance, applying Samsung's example to the Board's construction, the claims would allow displaying a first name alone, with the second name "fading in" and being displayed alone at some unspecified time occurring well into the future, *e.g.*, minutes, hours, or even days later. Blue-Br., 30. This reading of the claim cannot be correct because the objectives of the MemoryWeb Patents include, among other things, "sav[ing] a user significant time, provid[ing] significant information with minimal screen space, and provid[ing] an appealing and customizable interface that will enhance the user experience." Appx240 (2:51-55); Blue-Br., 30 (citing *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1354 (Fed. Cir. 2010)); *see also Micron Tech., Inc. v. N. Star Innovations, Inc.*, 855 F. App'x 679, 684 (Fed. Cir. 2021) (holding that the Board properly rejected claim construction that "fail[ed] to accord with the objectives of the . . . invention").

Samsung also mischaracterizes testimony from MemoryWeb's expert and claims that he "could not" opine on a hypothetical where "a name was momentarily hidden from view in Figure 32." Red-Br., 25 (citing Appx10252-10253 (57:24-

6

58:14)). Dr. Reinman explained that the hypothetical was too vague to provide a sweeping conclusion and consistently testified that a person of skill in the art would understand that the claims require both names in the people view be displayed simultaneously at some point in time. Appx4622-4628 (¶¶132, 137-144); Appx10033-10035 (¶¶71-79); Appx10263 (68:9-21).

In sum, the Board's construction is wrong. As set forth above, because (1) the "adjacent to" claim language requires that each thumbnail is displayed simultaneously with a name and (2) a people view requires at least two thumbnails and two names, then (3) the claims require that all four elements be displayed simultaneously.

## B.     The Board Erred in its Construction of "Responsive To"[1]

### 1.     The Board's Construction Effectively Equates "Responsive To" and "Subsequent To"

The Board's claim constructions of "responsive to" are flawed and Samsung's arguments to the contrary are unavailing. In the '658 Patent proceeding, the Board construed "responsive to" so that it "merely requires that the second event happen 'subsequent to' the first event based on a combination of user interaction and software implementation." Appx122. In the '228 Patent proceeding, the Board

---

[1] Portions of this section overlap with arguments in briefs in related cases *MemoryWeb, LLC v. Samsung Electronics Co., Ltd.*, Nos. 24-1328 and *MemoryWeb, LLC v. Unified Patents, LLC*, No. 24-1328. *See* Fed. Cir. R. 28(j).

rejected MemoryWeb's construction because the '228 Patent does "not require display of a first name" responsive to the "second input." Appx68.

For claim 1 of the '228 Patent, Samsung agrees that the plain meaning of "responsive to" requires a causal relationship between (i) "a second input" and (ii) "causing a people view to be displayed." Red-Br., 27; Appx330 (35:61-63). Likewise, for claim 5 of the '658 Patent, Samsung agrees that "responsive to" requires a causal relationship between (i) "a click or tap of the people selectable element and (ii) "displaying a people view." Red-Br., 27; Appx257 (36:30-33). The dispute is whether "responsive to" requires direct causation, as MemoryWeb proposed, or merely indirect causation.

Samsung also agrees that "responsive to" must mean something more than "subsequent to." Red-Br., 28-29. But the reality is that there is no meaningful distinction between "responsive to" and "subsequent to" under the Board's construction. In an effort to distinguish these phrases, Samsung points to the Board's inclusion of the phrase "combination of user interaction and software implementation" in its construction. Red-Br., 28. Samsung does not dispute that the Board's inclusion of "user interaction" in its construction needlessly injects ambiguity because the claims already recite user interaction. Blue-Br., 34. For example, Samsung cannot answer whether the "user interaction" contemplated in the Board's construction is different or the same as the claimed input or click or tap.

*Id*. It is also unclear what "software implementation" refers to in this context. The only thing clear is that the Board's construction erroneously allows for an undefined amount of "additional user interaction and software implementation" between the claimed input and displaying the claimed people view.

Samsung's attempt to illustrate the meaning of "responsive to" in the context of mailing a letter is inapposite to the meaning of "responsive to" in the MemoryWeb Patents. Red-Br., 27-28. As an initial matter, the analogy is not fully formed because there is no identifiable correspondence with the specific claim elements. For instance, the analogy does not identify what would be equivalent to the required click or tap of a specific element (as set forth in claim 5 of the '658 Patent), which displaying the people view must be "responsive to." The analogy is untethered from the claims and the overall import of the inventions such that its ability to illuminate claim meaning is limited, if not non-existent. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (cautioning against focusing "on the abstract meaning of words rather than . . . its meaning to the ordinary artisan after reading the entire patent"). There is no evidence suggesting this analogy is useful to the meaning of "responsive to" in the context of the MemoryWeb Patents as understood by a person of skill in the art as neither expert suggested this would be an appropriate analogy.

Samsung also incorrectly argues that MemoryWeb's construction would result in "[i]mporting a negative limitation." Red-Br., 28-29. MemoryWeb's

construction requires a direct causal connection between (i) the claimed input or click or tap and (ii) causing the people view to be displayed. This does not impose a negative limitation. *Ethicon LLC v. Intuitive Surgical, Inc.*, No. 2020-1600, 2021 WL 960766 (Fed. Cir. Mar. 15, 2021) (explaining that "claim constructions that exclude a particular element" include "a 'negative limitation'").

### 2.    The Board's Construction is Inconsistent with the Specification

Samsung claims the Board's construction is supported by embodiments in the specification that require additional user inputs. Red-Br., 30-32. Specifically, Samsung suggests that because the Board credited Dr. Greenspun's conclusion regarding claim construction, the Board agreed with his characterizations of the specification. Red-Br., 31. That is incorrect. The Board expressly found that "***nothing in the specification . . . requires any user input beyond the second input*** to display the first name." Appx68. Thus, contrary to Samsung's suggestion, the Board expressly disagreed with Samsung and Dr. Greenspun's arguments regarding the specification. *Id*.

Indeed, it is clear from FIG. 32 that the "people" view is immediately displayed responsive to selecting the people tab 1401 without any intervening inputs. Blue-Br., 36; Appx250 (22:43-57).

10



Appx221 (FIG. 32) (cropped)

This example is consistent with MemoryWeb's construction. *Apple Inc. v. Masimo Corp.*, No. 2022-1890, 2024 WL 137336, at *3 (Fed. Cir. Jan. 12, 2024) (holding that "[a]lthough the specification does not state the term in explicit definitional format, the Board's reading of the term is consistent with how the invention is described in the specification"). The fact that the Board could not identify any example supporting its broader construction confirms that it is incorrect. *Carrum Techs.*, 2021 WL 3574209, at *6 (rejecting broad construction that was "untethered to the specification").

Samsung's arguments that embodiments in the specification teach intervening inputs—which the Board rightly rejected—are meritless. For example, Samsung argues that in FIG. 32, "the people view that is ultimately shown to the user entails not only the initial pressing of 'People (1401) . . . but further the additional selection of a desired display order via a drop-down list (1402)." Red-Br., 30 (quoting Appx10171).

11



Red-Br., 31 (annotating Appx221 (FIG. 32))

That is incorrect. Nothing in the specification suggests that selecting the drop-down list 1402 is required to view the people view 1400 after selecting the people tab 1401. Appx250 (22:59-67); Appx6706 (23:11-24:8); Appx4498 (49:9-50:15); Appx4624 (¶135). The existence of sorting functionality does not change that displaying "the people view was responsive to [selecting] 1401." Appx5977-5978 (73:21-74:17); *see also* Appx5964-5967 (60:11-61:19, 62:16-63:5); Appx5783-5784 (36:7-37:9), Appx5791-5792 (44:19-45:14).

Samsung also argues that in FIG. 6, the people view includes "arrows that, upon selection, display additional thumbnails of people." Red-Br., 31.



Appx195 (FIG. 6)

While that may be true, FIG. 6 clearly shows a people view with at least two thumbnails and names (without the user needing to interact with the arrows), which is all the claims require. Appx195 (FIG. 6); Appx6710 (40:4-15).

In a similar vein, Samsung argues that FIG. 13 includes "a scroll bar and shows +,- controls that display/hide names of people" in the view. Red-Br., 31.

| Last Name | # People | # Photos | # Videos | # Docs |
|---|---|---|---|---|
| + Alberts | 2 | 8 | 0 | 0 |
| + Annex | 2 | 7 | 0 | 0 |
| + Bade | 3 | 8 | 0 | 0 |
| + Bacon | 4 | 8 | 0 | 0 |
| + Bates | 5 | 7 | 1 | 0 |
| + Boone | 6 | 6 | 2 | 2 |
| + Danas | 7 | 5 | 4 | 1 |
| + Danes | 8 | 7 | 3 | 2 |
| - Monk (All) | 2 | 499 | 4 | 14 |
|     Monk, CJ | 1 | 200 | 2 | 7 |
|     Monk, Jack | 1 | 199 | 2 | 7 |
| + Firestone | 21 | 1249 | 17 | 39 |
| + Moore | 1 | 4 | 6 | 3 |
| + Slythe | 1 | 9 | 0 | 9 |
| + Stein | 2 | 249 | 1 | 3 |
| + Testy | 4 | 788 | 2 | 12 |

Appx202 (FIG. 13)

But as Samsung's expert admitted, FIG. 13 is "chart" view that is not displayed responsive to a click or tap of a people selectable element as required in claim 5 of the '658 Patent. Appx241 (3:20-21); Appx6710-6711 (38:21-39:13, 40:13-24, 42:16-43:10). Moreover, even if Samsung's characterizations were correct (and they are not), "an alternative embodiment disclosed in the [patent] … does not outweigh the language of the claim." *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008). For the reasons discussed above, the contextual claim language makes clear that direct causation is required. *Supra*, § I.B.1.

14

### 3.      The Board Erred by Basing its Claim Construction on Purported Enablement Issues

Samsung argues that the Board did not err by addressing purported enablement issues in its claim construction analysis because it only did so in "passing." Red-Br., 33. That characterization of the Decision is incorrect: the ***sole*** reasoning for the Board's construction of "responsive to" in the '658 Decision was that the claims would not be enabled under MemoryWeb's construction. Appx121. Samsung does not dispute that it is improper to consider validity principles in a claim construction analysis unless the term at issue is ambiguous. Blue-Br., 40 (citing *Phillips,* 415 F.3d at 1327 and *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 911 (Fed. Cir. 2004)). Samsung does not allege that "responsive to" is ambiguous. *See* Red-Br., 33-35; Blue-Br., 40. Accordingly, the Board's focus on purported enablement issues in its claim construction analysis was improper as a matter of law. Blue-Br., 40.

Samsung's suggestion that MemoryWeb admitted that "responsive to" allows intervening user inputs during the oral hearing for the '658 proceeding is incorrect. *See* Red-Br., 33-34. While MemoryWeb acknowledged in the context of displaying large sets of information that scrolling may be required based on the size of the display or screen, that does not detract from the "responsive to" relationship between the claimed input and displaying the claimed view:

. . . the view refers to what is delivered by the application to the user interface device. And so, when you read the claims with that context, yes, there will be possibly situations where there are more photos than can be displayed on the actual screen of the device. But what's actually delivered to the user – to the phone's screen from the application does include all the photos . . . [S]crolling up on the screen so you can see the full real estate, that would be a view that is displayed responsive to the particular click or tap. Both experts agreed that scrolling. . . to see content that's already displayed on the underlying screen, would be contemplated by these claims.

App6948 (27:5-14); *see also* Appx6948-6949 (27:20-28:10). This is consistent with Dr. Reinman's testimony:

> **Q.** In what situations would it be possible for two inputs to meet the. . . "responsive to" requirement of the '658 patent claims?
>
> **A.** . . . I could think about of a scenario where a display is too small to fit an entire view and, therefore, scrolling is required. Sort of that virtual-eye space. And in that sense . . . that would be different than clicking to load additional content that was not intended to be displayed in the preliminary view.

Appx5980-5981 (76:15-77:6); *see also* Appx5982-5983 (78:13-79:19), Appx5994 (90:10-15).

### 4.    "Responsive To" Applies to All Elements of the "People View"

The Board's finding in the '228 Decision that the claim "does not require that the first name be displayed 'responsive to' the second input" is untenable because it is contrary to the plain claim language. Appx67-68. Samsung argues that the claim "does not require everything the 'people view' includes to be displayed instantly when the view is displayed." Red-Br., 35. But this argument is merely a restatement of Samsung's position that "responsive to" allows intervening inputs; it does not address the Board's finding that the phrase "responsive to" does not apply to displaying the first name.

As discussed above, Samsung agrees that the "people view" must include all four of the recited elements. *Supra* § I.A; Red-Br., 23-24. If the people view requires all of these elements and the people view is displayed "responsive to" the claimed input, then all elements of the people view must be displayed "responsive to" the input. Blue-Br., 42-43. There is no other logical reading of the claim.

## II.   THE BOARD'S CLAIM CONSTRUCTION ERRORS REQUIRE REVERSAL OF ITS UNPATENTABILITY FINDINGS

The Board's unpatentability findings for claims 5-12 of the '658 Patent and claims 1-17 of the '228 Patent must be reversed if the Court adopts either of MemoryWeb's claim constructions. Samsung does not dispute that Okamura does not disclose a people view (1) in which two names are displayed simultaneously or

(2) that is displayed "responsive to" the claimed input or click or tap under MemoryWeb's claim constructions. Blue-Br., 43-46; Red-Br., 36-37. For claims 7-12 of the '658 Patent, Samsung also does not dispute that Okamura does not disclose displaying a first person view under MemoryWeb's construction for "responsive to." Blue-Br., 54-58; Red-Br., 36-37.

In the event the Court agrees with either of MemoryWeb's construction, Samsung urges for vacatur and remand rather than reversal so that the Board can address alternative obviousness theories. Red-Br., 36. But, as MemoryWeb explained to the Board, Samsung's obviousness theories were improper under the Board's rules and this Court's precedent because they were not presented in the petitions and were raised for the first time in the replies. Red-Br., 37 n.6; Appx6473-6476; Appx10678-10681; *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1331 (Fed. Cir. 2019) (holding that "an IPR petitioner may not raise in reply 'an entirely new rationale' for why a claim would have been obvious"). The Board rightly ignored Samsung's attempts to raise new obvious theories.

## III.  THE BOARD'S FINDINGS FOR CLAIMS 7-12 OF THE '658 PATENT MUST BE REVERSED OR VACATED

### A.  The Board's Inconsistent Findings on the Same Technical Issue Cannot Stand

It cannot be seriously disputed that the Board's findings that two sets of claims containing substantively identical limitations—claims 18-19 of the '228 Patent (held

not unpatentable) and (2) claims 7-12 of the '658 Patent (held unpatentable)—were irreconcilable, which, at a minimum, requires vacatur and remand. Samsung cannot, and does not, dispute that the claims contain substantively identical limitations, and that Samsung's petitions presented the exact same arguments and evidence for these claims. Blue-Br., 47, 51; Appx257 (36:56-62); Appx331 (38:8-13); *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1342 (Fed. Cir. 2013); Red-Br., 39-45.

### 1. Samsung is Collaterally Estopped Based on the Non-Appealed '228 Decision

Samsung does not dispute that the four requirements for issue preclusion are present in this case. Red-Br., 39-43; Blue-Br., 51-53 (citing *Google LLC v. Hammond Dev. Int'l, Inc.*, 54 F.4th 1377, 1381 (Fed. Cir. 2022)). Instead, Samsung points to the Board's footnote in which it purported not to decide whether claims 18-19 of the '228 Patent were patentable (even though it did) and urges the Court to apply exceptions to issue preclusion. Red-Br., 39-43.

First, Samsung makes much of a footnote in the '228 Decision stating that the Board's findings for claim 18 "should not be taken as a determination as to whether Okamura and Belitz render claim 18 unpatentable." Red-Br., 40; Appx94 n.27. That statement has no legal effect. Because the Board concluded that Samsung did not prove that claims 18-19 of the '228 Patent were unpatentable (Appx94-95), claims 18-19 are patentable. *Aqua Prod., Inc. v. Matal*, 872 F.3d 1290, 1307 (Fed. Cir. 2017) (interpreting statutory language and holding that "if the petitioner does not

prove a claim . . . to be 'unpatentable,' the Board should find the claim to be 'patentable'"). Moreover, the Board's footnote does not change the fact that Samsung's arguments and evidence were found to be insufficient for claims 18-19 of the '228 Patent. Appx94. That is the issue that has preclusive effect. Blue-Br., 47-52.

Second, Samsung argues that issue preclusion should not apply because the Board's findings in the '228 Decision are unreviewable. Red-Br., 41-42; Restatement (Second) of Judgments § 28 (1982) (explaining that the inability to obtain review of the judgment is an exception to issue preclusion). Samsung conflates whether it had standing to cross-appeal the '228 Decision with whether that cross-appeal would have become moot. *Apple Inc. v. Qualcomm Inc.*, 17 F.4th 1131 (Fed. Cir. 2021) (explaining that standing and mootness are distinct doctrines). There is no serious dispute that Samsung could have timely cross-appealed the Board's findings for claims 18-19 of the '228 Patent but chose not to. MemoryWeb filed its notice of appeal on January 3, 2024, so Samsung's deadline to cross-appeal was January 17, 2024. Appx13581-13582; FED. R. APP. P. 4(a)(3). Samsung knew then that MemoryWeb was appealing the Board's findings for claims 1-19 in *Apple*, and that those findings could be reversed. The fact that MemoryWeb limited its appeal in *Apple* to claim 15 of the '228 Patent ***after*** the time for Samsung to properly file its cross-appeal cannot excuse Samsung's decision not to cross-appeal.

20

Even if Samsung's cross-appeal was timely filed and would have been "become moot" after MemoryWeb's Opening Brief in *Apple*, the proper course would have been for Samsung to ask the Court "to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39–41 (1950). This procedure "prevent[s] a judgment, unreviewable because of mootness, from ***spawning any legal consequences***." *Id*. at 41 (emphasis added). Parties often ask this Court to vacate IPR decisions when their appeal becomes moot to avoid the legal consequences of the underlying decisions. *See, e.g.*, *SynQor, Inc v. Vicor Corp.*, 988 F.3d 1341, 1355-56 (Fed. Cir. 2021) (finding appeal moot and vacating Board's findings where claims were invalidated in another proceeding); *Thorne Rsch., Inc. v. Trustees of Dartmouth Coll.*, No. 2023-1055, 2023 WL 8707444 (Fed. Cir. Dec. 18, 2023) (same); *see also SynQor, Inc. v. Vicor Corp.*, No. 2020-1259, 2022 WL 2187567 (Fed. Cir. June 17, 2022).

The problem for Samsung is that because it did not cross-appeal, it cannot seek vacatur of the '228 Decision and therefore cannot avoid its "legal consequences," including its preclusive effect. *Munsingwear*, 340 U.S. at 41; *Koss Corp. v. Bose Corp.*, 107 F.4th 1363, 1367-68 (Fed. Cir. 2024) (instructing that "to be assured that" a judgment "would have no collateral estoppel effect," the party affected by the judgment needs to appeal and seek vacatur) (quoting *Hartley v. Mentor Corp.*, 869 F.2d 1469, 1473 (Fed. Cir. 1989)). There is nothing "absurd"

about a sophisticated litigant like Samsung filing a cross-appeal when the Board found against it in the '228 Decision and MemoryWeb was appealing the same claims in *Apple*. Red-Br., 43; *Uniloc USA, Inc. v. Motorola Mobility LLC*, 52 F.4th 1340, 1350 (Fed. Cir. 2022) (observing that "sophisticated litigant[s] . . . are presumed to know background legal principles like collateral estoppel").

Third, Samsung argues that it should be relieved of the preclusive effect of the '228 Decision under the "lack-of-incentive-to-litigate exception." Red-Br., 42-43. The notion that Samsung "lacked any incentive to file a cross-appeal" in view of the *Apple* proceeding is, at best, disingenuous. Red-Br., 42. As discussed above, Samsung had every incentive to cross-appeal the Board's adverse findings in the '228 Decision because MemoryWeb was appealing the Board's findings for claims 18-19 in *Apple*. It was not until MemoryWeb's Opening Brief ***months after Samsung's cross-appeal deadline*** that MemoryWeb dropped its appeal for these claims.

Samsung's reliance on *Power Integrations, Inc. v. Semiconductor Components Indus., LLC*, 926 F.3d 1306, 1312 (Fed. Cir. 2019) is inapposite. There, Power Integrations appealed the Board's § 315(b) determination in a first IPR but did not appeal the Board's finding on the same issue in a second IPR. *Power Integrations*, 926 F.3d at 1312-1313. While all requirements for issue preclusion were satisfied, the Court found that Power Integrations had little incentive to appeal

22

the second IPR because the would-be appellee was found not to infringe that patent in district court. *Id*. at 1313. By contrast, the patent for which Power Integrations did appeal was involved in infringement verdicts awarding millions of dollars in damages. *Id*. In this case, there have been no infringement or non-infringement findings for the MemoryWeb Patents. And unlike in *Power Integrations*, Samsung had every incentive to cross-appeal the '228 Decision in case the Board's decision in *Apple* was reversed on appeal.

Samsung's suggestion that it had no incentive to cross-appeal in view of the Boards's findings in the *Apple* proceeding is also inconsistent with its representations to the Board. In arguing for institution, Samsung acknowledged that Apple was also challenging the '228 Patent but argued that it had "divergent interests" relative to Apple and needed to pursue its own IPR "to protect its own interests." Appx9612-9613. Samsung also noted that if MemoryWeb settled with Apple, Samsung "would still need to protect is own interests." Appx9613. Under the same reasoning, the possibility that MemoryWeb could prevail in its appeal in *Apple* could expose Samsung to liability for infringement of claims 18-19 of the '228 Patent, providing a strong incentive for Samsung to cross-appeal.

### 2.    The Board's Inconsistent Findings are Arbitrary and Capricious

Even if the Court were to find that issue preclusion does not apply, vacatur is proper because the Board made inconsistent findings on the same technical issue.

Blue-Br., 53-54. Samsung acknowledges that the Board's failure to "explain reaching 'opposite results' on 'the same technical issue,'" can lead to a finding that the decision is arbitrary and capricious. Red-Br., 43-44 (quoting *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1312 (Fed. Cir. 2017)). But nothing Samsung argues can explain away the blatant inconsistencies in the Board's conclusions.

Samsung first argues that the "Board's decision is readily discernible." Red-Br., 44 (citing *Paice LLC v. Ford Motor Co.*, 881 F.3d 894, 905 (Fed. Cir. 2018)).[2] But Samsung only points to the Board's conclusory finding in the '658 Decision that Okamura and Belitz meet the requirements of claim 7 of the '658 Patent. *Id*. (citing Appx159). This avoids the issue, which is that the Board did not explain how it reached the opposite conclusion based on the same evidence and arguments for a substantively identical claim in the '228 Decision. Appx159. Tellingly, Samsung does not even attempt to distinguish MemoryWeb's authority holding that this failure warrants vacatur and remand *See* Red-Br., 43-45; Blue-Br., 53-54 (citing *Vicor*, 869 F.3d at 1312; *Emerson Elec. Co. v. SIPCO, LLC*, 745 F. App'x 369, 373 (Fed. Cir. 2018); *BASF Corp. v. Enthone, Inc*., 749 F. App'x 978, 985 (Fed. Cir. 2018)).

---

[2] Unlike the cases cited by MemoryWeb, *Paice* does not address the implications of inconsistent decisions across multiple Board proceedings. 881 F.3d at 905.

Samsung next argues that "the Board's note that it was not deciding the merits in the '228 patent's proceeding explained why it was reaching a different outcome." Red-Br., 44 (citing Appx94 n.27). Samsung is wrong. The Board *did* decide the merits in the '228 Decision: it found that Samsung did not meet its burden to show unpatentability. Appx94-95. Under this Court's precedent, that is a finding that claims 18-19 of the '228 Patent are patentable despite the Board's footnote. *Aqua Prod.*, 872 F.3d at 1307. In any event, the Board's footnote does not explain how it is that when considering the exact same arguments and evidence for substantively identical claim limitations, it reached the opposite conclusions with respect to the sufficiency of Samsung's petitions. In other words, even if the outcome in the '228 Decision was predicated on "a deficiency in the Petition" as Samsung suggests, the same deficiency would necessarily exist in Samsung's nearly identical '658 Petition. Red-Br., 40. The Board never explained why one petition was deficient while another substantively identical petition was not.

Finally, Samsung's suggestion that MemoryWeb may not have "preserved this argument for claims 8-12" even though those claims depend from claim 7 is specious. Red-Br., 44. MemoryWeb indicated that its arguments for vacatur based on the Board's inconsistent decisions were directed to claims 7-12 and only focused on claim 7 throughout the discussion because that is the claim for which the Board made inconsistent findings relative to the '228 Decision. *See, e.g.*, Blue-Br., 46

(referring to claims 7-12); *see also id.*, 50, 61 (referring to claim 7 "***and its dependent claims***").

### B.    The Board Ignored a Critical Argument Regarding the "First Person View" and the "Responsive To" Requirement

Even if the Court affirms the Board's construction for "responsive to," the Court should vacate and remand the '658 Decision because the Board ignored MemoryWeb's argument that Okamura does not meet Samsung's construction for "responsive to." Blue-Br., 59-61 (citing *Alacritech, Inc. v. Intel Corp.*, 966 F.3d 1367, 1371 (Fed. Cir. 2020)). Samsung does not dispute that the Board (1) based its conclusion solely on its rejection of rejecting MemoryWeb's claim construction and (2) failed to address MemoryWeb's arguments under Samsung's construction. Red-Br., 39; Appx55; Appx183.

Instead, Samsung argues that MemoryWeb's argument was "forfeited" because it "was raised for the first time in MemoryWeb's sur-reply" and because it was "skeletal or underdeveloped." Red-Br, 39 (quoting *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1296 (Fed. Cir. 2009)). This argument lacks merit. Forfeiture only occurs when a party fails "to make the timely assertion of a right." *U.S. v. Olano*, 507 U.S. at 733 (1993). Here, MemoryWeb argued, with supporting expert testimony, that Okamura's numerous intervening inputs do not satisfy any reasonable construction for "responsive to," including Samsung's. Appx6471 (citing Appx4683–4687 (¶¶272-278)). MemoryWeb timely raised this argument in

26

response to the claim construction Samsung proposed for the first time in its reply. *Cf.* Appx446-447 (proposing no claim construction in petition) and Appx5719-5724 (proposing construction for "responsive to" in reply). Further, Samsung did not object when MemoryWeb raised this argument during the oral hearing. Appx6951-6954 (30:22-33:10). *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 925 (Fed. Cir. 2019) (noting that "[p]arties are not barred from elaborating on their arguments on issues previously raised" during oral hearing).

Samsung also claims that the Board did not err because this was supposedly a "minor argument" by MemoryWeb. Red-Br., 39 (quoting *Yeda Rsch. v. Mylan Pharms., Inc.*, 906 F.3d 1031, 1046 (Fed. Cir. 2018)). But Samsung does not distinguish MemoryWeb's cited authority holding that vacatur and remand is required when the Board ignores an aspect of the dispute. Blue-Br., 59-61 (citing *Alacritech*, 966 F.3d at 1371 and *In re Nuvasive, Inc.*, 842 F.3d 1376, 1383 (Fed. Cir. 2016)). Unlike the *Yeda* case where the Board merely failed to expressly address a "minor argument," whether Okamura meets the "responsive to" requirement was a hotly contested issue. *Yeda Rsch.*, 906 F.3d at 1046; Appx4216-4222; Appx6468-6473.

Samsung also overlooks that the Board's construction expressly contemplates that some unspecified number of intervening inputs would eventually break the chain of causation for "responsive to." Appx122. What is missing is any explanation

as to how Okamura—which has numerous intervening inputs between the alleged

people and person views—meets the Board's claim construction. Appx55;

Appx6471. The Board's silence on this issue is especially egregious because the

Board did not adopt MemoryWeb's construction for "responsive to" in the '228

Decision yet still found that Samsung did not meet its burden for claim 18 of the

'228 Patent. Appx94. The Board not only erred by failing to address MemoryWeb's

argument; it also erred by failing to explain how Okamura's numerous intervening

inputs satisfies the "responsive to" construction.

## IV.  THE BOARD ERRED IN FINDING THAT IT WOULD HAVE BEEN OBVIOUS TO COMBINE OKAMURA AND BELITZ

### A.  Like the Board, Samsung Mischaracterizes MemoryWeb's Arguments Regarding Okamura's Teaching Away

The issue MemoryWeb presented for appeal is whether the Board erred in

finding that Okamura's discussion of "related art" teaches away from the proposed

combinations with Belitz where the Board mischaracterized or misunderstood

MemoryWeb's arguments about Okamura's "related art." Blue-Br., 67-68. Rather

than address this issue, Samsung instead continues to assert the same flawed

assessment of the arguments and issues presented below that led the Board to reach

its erroneous conclusions.

Addressing the '228 Decision, Samsung argues that "the Board found that

'Belitz does not suffer from the same geographical deficiencies as the references

discredited by Okamura." Red-Br., 54 (quoting Appx90). But Samsung misleadingly omits the remainder of that sentence in which the Board clarified that the "geographical deficiencies" it was referring to related to "overlap." Appx90. MemoryWeb never argued that Okamura's problem with the related art was "overlap." Blue-Br., 67. Rather, MemoryWeb explained that Okamura teaches that the related art problematically used a single uniformly scaled background map, thereby preventing the user from comprehensively grasping the correspondence between different photos and locations. *Id.*, 62-64. MemoryWeb then explained how Samsung's proposed Okamura-Belitz combination leads to the same problem. *Id.*, 65-67. The Board did not address these issues.

Addressing the '658 Decision, Samsung focuses on the Board's findings regarding "similarities between Belitz's thumbnail images and Okamura's cluster maps." Red-Br., 55. But that argument is the same mischaracterization of the issues that led the Board to err. MemoryWeb's teaching away arguments were tied to Okamura's disparagement of scaling problems in the related art and how Belitz results in the same problem – MemoryWeb never argued that Okamura teaches away from any use of thumbnails. Appx141 (citing Appx4185); Blue-Br., 68; Appx4185-4191; Appx6478-6480. Samsung ignores MemoryWeb's primary argument in this appeal, which is that the Board wrongly thought MemoryWeb was arguing the

problem with the related art was that it used "generic markers." Blue-Br., 68; Red-Br., 55.

Samsung also argues that the Board "found that there would have been motivation to combine even if the proposed combination had the same disparaged feature" as the related art. Red-Br., 56. However, the Board's findings regarding alleged benefits of the combination were predicated on its mischaracterization of MemoryWeb's arguments as to what Okamura teaches regarding the related art. Red-Br., 57; Appx90; Appx141. Because the Board did not properly consider those arguments, its findings that the Okamura-Belitz combination would have been obvious are inherently flawed. *AstraZeneca AB v. Mylan Pharms. Inc.*, 19 F.4th 1325, 1337 (Fed. Cir. 2021) (stating that "reference that properly teaches away can preclude a determination that the reference renders a claim obvious"). This failure at least requires vacatur and remand. *Vicor*, 869 F.3d at 1321.

## B.     The Board Failed to Properly Weigh the Disadvantages to the Okamura-Belitz Combination

Contrary to Samsung's suggestions, MemoryWeb's arguments do not invite the Court "to wade into . . . deeply factual issues concerning motivation to combine." Red-Br., 45. Instead, similar to the issues above with respect to Okamura's teaching away, the problem is that the Board did not make sufficient findings and did not adequately weigh the disadvantages of the Okamura-Belitz combination against the

advantages. Accepting MemoryWeb's arguments does not require reweighing evidence; it only requires determining that the Board's analysis is deficient.

Samsung does not deny that the Board failed to make any express findings as to what the supposed "advantages" to the Okamura-Belitz combination were in the '228 Decision. Blue-Br., 69; Red-Br., 49; Appx90. Instead, Samsung claims that the Board implicitly adopted Samsung's arguments because it cited several pages of Samsung's reply brief. Red-Br., 49. But the Board did not expressly adopt those arguments nor, more importantly, did it "explain why it credited" them. *Nuvasive*, 842 F.3d at 1384-85 (vacating and remanding because the Board's reasoning for its obviousness conclusion could not be reasonably discerned). MemoryWeb previously explained that the only alleged advantage Samsung articulated was that the combination "provid[es] a good view of what location is associated with what." Blue-Br., 69 (citing Appx10183-10184). In its Response Brief, Samsung points to the user being able to understand what location each thumbnail is associated with as another alleged advantage. Red-Br., 49 (citing Appx10185). The Board did not expressly reference this supposed advantage in the Decision. Appx90-91. The Board's failure to expressly identify the alleged "advantages" does not "enable judicial review." *Pers. Web Techs., LLC v. Apple, Inc.*, 848 F.3d 987, 994 (Fed. Cir. 2017).

With respect to the purported "advantages," Samsung does not deny that Okamura ***already*** provides "a good view of what location is associated with what," and, according to Okamura, it worsens its ability to convey that information. Blue-Br., 69-70 (citing Appx10055 (¶¶152-153)). Because this "advantage" is already present in Okamura, there is no reason to combine Okamura with Belitz to achieve it. *Kinetic Concepts, Inc. v. Smith & Nephew, Inc.*, 688 F.3d 1342, 1369 (Fed. Cir. 2012) (finding "no reason to combine" where both references "independently accomplish similar functions"). The Board ignored this argument, and its findings are not supported by substantial evidence.

In both decisions, the Board failed to expressly weigh the purported "advantages" of combining Okamura with Belitz against the many disadvantages. Appx90. *Winner Int'l Royalty Corp. v. Wang*, 202 F.3d 1340, 1349 n.8 (Fed. Cir. 2000). The Board never addressed how the unstated advantages outweigh Okamura's strong preference for cluster maps over systems like the related art and Belitz that use a single map. Appx90. Instead, the Board merely observed that a skilled artisan "would have been capable of weighing [the advantages] against any benefits lost." *Id*. (citing *Winner*, 202 F.3d at 1349 n.8).

## CONCLUSION AND RELIEF SOUGHT

The Board's decisions that claims 1-13 of the '658 Patent and claims 1-17 of the '228 Patent are unpatentable should be reversed or, at least, vacated and remanded for further proceedings.

Respectfully submitted,

/s/ *Jennifer Hayes*
JENNIFER HAYES
NIXON PEABODY LLP
300 South Grand Avenue
Suite 4100
Los Angeles, CA 90071-3151
Tel:    213-629-6000
Fax:    213-629-6001

DANIEL SCHWARTZ
MATTHEW WERBER
ANGELO CHRISTOPHER
NIXON PEABODY LLP
70 West Madison Street
Suite 5200
Chicago, IL 60602-4378
Tel:    312-977-4400
Fax:    312-977-4405

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32(g)(1) and Federal Circuit

Rule 32(b)(3), I certify that the brief contained herein has a proportionally spaced

14-point font typeface and contains 6,806 words, based on the "Word Count" feature

of Microsoft Word, excluding the cover page, patent claims, Certificate of Interest,

Tables of Contents and Authorities, signature block, Certificate of Compliance, and

Certificate of Service.


Date:  October 7, 2024                    */s/ Jennifer Hayes*
                                          JENNIFER HAYES
                                          **NIXON PEABODY LLP**
                                          300 South Grand Avenue
                                          Suite 4100
                                          Los Angeles, CA 90071-3151
                                          Telephone: (213) 629-6000
                                          Facsimile: (213) 629-6001

                                          *Counsel for Appellant*
                                          *MemoryWeb, LLC*

# CERTIFICATE OF SERVICE

I, Jennifer Hayes, hereby certify that, on this 7th day of October 2024, I caused

a copy of the foregoing **Appellant MemoryWeb LLC's Reply Brief** to be served

on counsel of record via electronic service:

Date:  October 7, 2024                    */s/ Jennifer Hayes*
                                          JENNIFER HAYES
                                          **NIXON PEABODY LLP**
                                          300 South Grand Avenue
                                          Suite 4100
                                          Los Angeles, CA 90071-3151
                                          Telephone: (213) 629-6000
                                          Facsimile: (213) 629-6001

                                          *Counsel for Appellant MemoryWeb, LLC*